**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

THE STATE OF WASHINGTON,     )     No. 79817-1-I
 )
     Respondent,     )
 )     DIVISION ONE
     v.     )
 )
JOSE ELMER MARTINEZ PLATERO,  )
 )     PUBLISHED OPINION
     Appellant.     )
 )

MANN, C.J. — Jose Elmer Martinez Platero appeals his convictions for one count of child rape and three counts of child molestation. He argues that the trial court erred by allowing the State to amend the information mid-trial. He also challenges several of his community custody conditions. Because the State moved to amend the information prior to resting its case, the trial court did not err in allowing the amendment. We affirm Martinez Platero's conviction. However, we remand to the trial court to: (1) reexamine how the community custody conditions concerning contact with minor children affect Martinez Platero's ability to parent his daughter; and (2) to strike the community custody condition requiring alcohol and drug testing because it is not crime related.

FACTS

Elva Reyes had two daughters, E.M. and G.M., when she met Martinez Platero. Martinez Platero began living with Reyes in 2013, when E.M. was six years old and G.M. was two years old. Reyes and Martinez Platero had a daughter together, W.M., in 2016.

Martinez Platero finished work earlier than Reyes and picked up the girls from their babysitter five days a week. In 2017, E.M. disclosed to a friend that her stepfather touched her inappropriately. The school principal asked Jennifer Reynolds, a school counselor from E.M. and G.M's elementary school, to check in with the girls to see if they felt safe at home.[1] E.M. and G.M. both disclosed the abuse to Reynolds. As a mandatory reporter, Reynolds immediately reported this information to Child Protective Services (CPS).

After discovering that the girls' stepfather, Martinez Platero, still lived in the home, Kent police officers took E.M. and G.M. into protective custody. Both girls participated in forensic child interviews and described the sexual abuse in detail. During the investigation, E.M. said that Martinez Platero threatened her, saying that her mother would be unable to afford rent if she told anyone what happened.

The State charged Martinez Platero with four counts of first degree child rape: count 1 committed against E.M. between September 23, 2013 and April 20, 2017; count 2 committed against E.M. between September 23, 2013 and April 20, 2017; count 3 committed against E.M. between September 23, 2013 and April 20, 2017; and count 4 committed against G.M. between February 14, 2014 and April 20, 2017.

---

[1] In April 2017, at the time of the incidents, E.M. was in third grade, and G.M. was in kindergarten.

E.M. and G.M. both testified at trial. Martinez Platero testified in his own defense. Martinez Platero categorically denied raping or touching either E.M. or G.M. His primary argument was that E.M. and G.M. were not credible due to inconsistencies between their testimony, their pretrial interviews, and the testimony of other witnesses.

After the State finished examining its final witness, but before formally resting its case, the State moved to amend three of the first degree rape counts to first degree child molestation. Martinez Platero objected, contending that his defense tailored their cross-examination of witnesses based on the original charges. The court granted the amendments.

The jury convicted Martinez Platero as charged in the amended information. At sentencing, Martinez Platero moved to dismiss the charges, alleging that under the amended information, he could have argued that he only molested the girls and did not commit any penetrative acts. The sentencing court denied the motion. The court imposed a sentence of 300 months to life for the rape conviction and concurrent sentences of 198 months to life for the molestation convictions. The court also imposed numerous community custody conditions. Martinez Platero appeals.

ANALYSIS

A. <u>Amended Charges</u>

Martinez Platero argues that the trial court erred when it allowed the State to amend three of the counts of child rape to child molestation. We disagree.

We review the trial court's decision allowing the State to amend the information for an abuse of discretion. <u>State v. Brooks</u>, 195 Wn.2d 91, 96, 455 P.3d 1151 (2020).

The court abuses its discretion if its decision is manifestly unreasonable or based on untenable reasons. Brooks, 195 Wn.2d at 97.

The Washington State Constitution provides defendants the right "to demand the nature and cause of the accusation against him." WASH. CONST. art. I, § 22. Under this provision, the accused cannot be tried for an offense not charged. State v. Pelkey, 109 Wn.2d 484, 487, 745 P.2d 854 (1987). "Defendants have a right to be fully informed of the nature of accusations against them so that they may prepare an adequate defense. This right is satisfied when defendants are apprised with reasonable certainty of the accusations against them." State v. Leach, 113 Wn.2d 679, 695, 782 P.2d 552 (1989).

Under CrR 2.1(d), the court may permit an amendment to the information "at any time before verdict or finding if substantial rights of the defendant are not prejudiced." In Pelkey, our Supreme Court held that

> A criminal charge may not be amended after the State has rested its case-in-chief unless the amendment is to a lesser degree of the same charge or a lesser included offense. Anything else is a violation of the defendant's article 1, section 22 right to demand the nature and cause of the accusation against him or her. Such a violation necessarily prejudices this substantial constitutional right, within the meaning of CrR 2.1(e).[2]

109 Wn.2d at 491 (emphasis added). Thus, under "the Pelkey rule" any amendment from one crime to a different crime after the State has rested is per se prejudicial. State v. Vangerpen, 125 Wn.2d 782, 791, 888 P.2d 1177 (1995).

Although Martinez Platero contends that article I, section 22 prohibits the State from amending the information to charge a different crime, Pelkey established a bright line rule. It is only a per se violation of article I, section 22, if the State amends charges

---

[2] The bill of particulars was previously under section (e) in an earlier version of CrR 2.1.

to something other than a lesser degree of the same charge or to a lesser included offense, after it rests its case in chief. Under Pelkey, the State may amend the charges before resting its case in chief, which is what the State did here.

Martinez Platero argues that the recent decision in State v. Gehrke, 193 Wn.2d 1, 434 P.3d 522 (2019), supports his argument that the trial court erred in approving the amendment because even though the State had not formally rested, it had completed the presentation of its case in chief. In Gehrke, the State moved to amend the information to add a manslaughter charge to the second degree murder charge, after the State called its last witness but before it formally rested. This court affirmed, holding that, under CrR 2.1(d), Gehrke could not demonstrate prejudice because his defense at trial was self-defense and that would have also been his defense to the amended charge. The Supreme Court reversed in a fractured opinion. The lead opinion, signed by four justices, held that the Pelkey rule was "not concerned with whether the State has formally rested," but whether it has "functionally rested" by completing its presentation of evidence. Gehrke, 193 Wn.2d at 9-11.

Three justices dissented, holding that the Pelkey rule should be literally applied, and that per se prejudice does not occur until after the State has formally rested. Gehrke, 193 Wn.2d at 21-22 (Gonzalez, J., dissenting). Two additional justices concurred with the dissent in principle, but with the lead opinion's result:

> We have established a bright line rule that "[a] criminal charge may not be amended after the State has rested its case in chief unless the amendment is to a lesser degree of the same charge or a lesser included offense" because such an amendment creates prejudice per se. State v. Pelkey, 109 [Wn.2d] 484, 491, 745 P.2d 854 (1987) (emphasis added). I agree with the dissent that maintaining this bright line rule is important in order to give clarity to both judges and litigants. See dissent at 534-35. I

also agree that because, in this case, the State moved to
amend <u>before</u> resting its case in chief, this rule does not apply. . . .
However, I write separately because I believe that . . . Gehrke
demonstrated actual prejudice [under CrR 2.1(d)] in this case.

<u>Gehrke</u>, 193 Wn.2d at 20 (Fairhurst, J., concurring).

Thus, the "functionally rested" language relied upon by Martinez Platero was
supported only by the four-justice lead opinion and not the concurrence or dissent. "A
plurality has little precedential value and is not binding." <u>State v. Johnson</u>, 173 Wn.2d
895, 904, 270 P.3d 591 (2012). Therefore, <u>Pelkey</u> remains good law and draws a bright
line that per se prejudice does not occur where the State amends the charges to
something other than a lesser degree or lesser included offense <u>before the State</u>
<u>formally rests</u>. In Martinez Platero's case, no <u>Pelkey</u> violations occurred because the
State had not formally rested when it moved to amend the information.

Martinez Platero relies on <u>State v. Olds</u>, 39 Wn.2d 258, 261, 235 P.2d 165
(1951), <u>State v. Lutman</u>, 26 Wn. App. 766, 767, 614 P.2d 224 (1980), and <u>State v. Carr</u>,
97 Wn.2d 436, 437, 645 P.2d 1098 (1982), to support his assertion that article I, section
22 prohibits the State from amending the information to charge different crimes. But all
of these cases predate, and were addressed, in <u>Pelkey</u> before the court adopted its
bright line rule. 109 Wn.2d at 487-91.

Further, this court rejected Martinez Platero's different crimes argument in <u>State</u>
<u>v. Aho</u>, 89 Wn. App. 842, 848, 954 P.2d 911 (1998), <u>rev'd on other grounds</u>, 137 Wn.2d
736, 975 P.2d 512 (1999). In <u>Aho</u>, we held that the defendant was not prejudiced when
the State amended the charge of child rape to child molestation after both victims
testified. <u>Aho</u>, 89 Wn. App. at 848. The State gave the defendant notice that it may

amend the charges, and the defendant was unable to point to any "fact of consequence" to demonstrate that his trial strategy or cross-examination of the witnesses was affected by the amendment.  Aho, 89 Wn. App. at 849.  While the defendant argued that the two crimes were different, this court held:

> While child molestation is a different crime from rape of a child, that fact is of no help to Aho here.  As the trial court correctly observed below, the critical difference between the main charge of rape and the alternative charge of molestation was whether penetration had occurred. We fail to see how, on these facts, either the lack of either additional discovery or a continuance adversely affected Aho's defense.

Aho, 89 Wn. App. at 849.

Although child rape and child molestation are different crimes, as in Aho, this distinction is of no help to Martinez Platero.  Both the child rape and later amended child molestation charges were based on the same factual scenario.  Martinez Platero categorically denied touching either child.  Under these facts, Martinez Platero cannot demonstrate—and does not attempt to demonstrate—prejudice.  For these reasons, the trial court did not abuse its discretion by granting the State's amendments.

## B. Community Custody Conditions – Right to Parent

Martinez Platero next argues that the community custody conditions limiting his contact with minors violate his fundamental right to parent.  We agree.

We review community custody conditions for an abuse of discretion and will reverse them if they are manifestly unreasonable.  State v. Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018).  "Conditions interfering with fundamental rights, such as the right to a parent-child relationship, must be 'sensitively imposed' so they are 'reasonably necessary to accomplish the essential needs of the State and public order.'"  State v.

Torres, 198 Wn. App. 685, 689, 393 P.3d 894 (2017) (quoting In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010)).

The court imposed the following community custody conditions on Martinez Platero for life: (1) "have no direct and/or indirect contact with minors"; (2) "Do not hold any position of authority or trust involving minors"; and (3) no contact with "any minors without supervision of a responsible adult who has knowledge of this conviction."

Parents have a fundamental liberty interest in the care, custody, and management of their child. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394-95, 71 L. Ed. 2d 599 (1982). The State concedes that the trial court did not analyze whether Martinez Platero should be prohibited from contacting his biological daughter before imposing the condition.

In State v. DeLeon, 11 Wn. App. 2d 837, 839, 456 P.3d 405 (2020), the defendant pleaded guilty to molesting his stepchildren, and the trial court imposed a condition prohibiting him from having contact with all minors, including his biological children. DeLeon, 11 Wn. App. 2d at 839. This court remanded holding that the trial court failed to consider the defendant's constitutional right to parent, to include an explanation as to why the conditions applied to the defendant's biological children, or to analyze less restrictive alternatives. DeLeon, 11 Wn. App. 2d at 841.

The trial court did not consider Martinez Platero's relationship with his biological daughter. We accept the State's concession and remand to the trial court to consider whether a no-contact provision with W.M. is appropriate, and to consider how special conditions 15 and 16 apply to W.M.

C. Community Custody Condition – Sexual Contact

Martinez Platero next argues that the court erred by imposing the community custody condition requiring him to disclose his offender status prior to having sexual contact. We disagree.

The court may impose and enforce crime-related prohibitions and affirmative conditions as part of any sentence. RCW 9.94A.505(9). A "crime-related prohibition" is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). To be crime-related, there must be a reasonable relationship between the condition and the defendant's behavior, but "the prohibited conduct need not be identical to the crime of conviction." Nguyen, 191 Wn.2d at 684.

Martinez Platero challenges special condition 5:

Inform the supervising CCO and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such.

We recently held that a nearly identical condition was constitutional as long as the condition was crime-related. See State v. Lee, 12 Wn. App. 2d 378, 403, 460 P.3d 701 (2020). Here, this condition is plainly crime-related and sensitively imposed. Martinez Platero's victims were children and he gained access to them from his relationship with their mother. Martinez Platero further exploited this relationship, threatening E.M. with her mother's financial insecurity if she disclosed the abuse. This danger will continue to exist even if Martinez Platero is only required to disclose to

partners with children, as other adults may be a caregiver to minors. For these reasons, we affirm.

    D. <u>Community Custody Condition – Substance Testing</u>

Finally, Martinez Platero challenges special condition 10 that requires he be available and "submit to urinalysis and/or breathanalysis upon the request of the CCO and/or chemical dependency treatment provider." Martinez Platero argues that the condition is not crime-related. The State concedes. We accept the State's concession and remand to strike the condition.

We remand to the trial court to reexamine how the community custody conditions concerning contact with minor children affect Martinez Platero's ability to parent his daughter and to strike the community custody condition requiring alcohol and drug testing because it is not crime-related. We otherwise affirm.

_____
Mann, C.J.

WE CONCUR:

_____    _____
Chun, J.                                      Andrus, A.C.J.