# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 82135-1-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| FREDDY ESCOBAR, | |
| Appellant. | |

APPELWICK, J. — Escobar seeks reversal of his conviction for child molestation of his girlfriend's daughter. He claims the trial court violated the appearance of fairness doctrine during the child hearsay evidentiary hearing. He argues that ineffective assistance of counsel resulted in a prior federal criminal conviction being improperly scored. He also challenges community custody conditions and certain legal financial obligations. We affirm Escobar's conviction and remand for resentencing.

## FACTS

Freddy Escobar and K.O. began dating in 2015 and lived together from 2016 to November 2018. K.O. had a daughter, A.O., who was born in 2012. A.O. lived with her mother and Escobar. Escobar treated A.O. like his daughter and often cared for her in the evenings while K.O. was in school. Escobar and K.O. also had a son together.

In November 2018, A.O. disclosed to K.O. that Escobar was touching her inappropriately. After hearing this, K.O. left the house with both children. They went to the police station where an officer took a report and arranged for a sexual assault examination at the hospital. During the examination, A.O. told the forensic nurse that her father touched her and that she did not want him to do that. She also spoke with a child interview specialist.

The State charged Escobar with two counts of first degree rape of a child and one count of first degree child molestation. A jury convicted Escobar of child molestation, but acquitted him of the two counts of first degree rape of a child.

Escobar had a prior federal felony conviction for conspiracy to commit murder in aid of racketeering. During sentencing, Escobar agreed that his prior federal conviction was comparable to Washington's criminal conspiracy to commit first degree murder. This resulted in an offender score of 2 with a standard range sentence of 62 to 82 months. The court imposed a midrange sentence of 72 months of incarceration. Escobar appeals.

DISCUSSION

I.   <u>Appearance of Fairness During the Child Hearsay Hearing</u>

The State sought to use the child hearsay exception under RCW 9A.44.120 to admit statements that A.O. made to her mother, aunt, and grandfather, as well as the child forensic interviewer and the nurse who conducted her sexual assault examination. This exception allows for admission of hearsay evidence "made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another." RCW 9A.44.120(1)(a)(i). When reviewing whether

2

to admit hearsay evidence, the court must conduct a hearing outside the presence of the jury and find "that the time, content, and circumstances of the statement provide sufficient indicia of reliability." RCW 9A.44.120(1)(b). We review a trial court's decision to admit child hearsay testimony for abuse of discretion. State v. Kennealy, 151 Wn. App. 861, 879, 214 P.3d 200 (2009).

The trial court conducted a hearing on the admissibility of child hearsay evidence. The State presented testimony from a number of witnesses which addressed when and under what circumstances A.O. had disclosed abuse to them. However, the State failed to adduce the actual words A.O. spoke. Without those words, the trial court could not determine that the statute applied and had no need to rule on admissibility of the evidence.

Escobar does not challenge the trial court's admission of A.O.'s hearsay testimony as an abuse of discretion. Instead, Escobar argues the trial court violated the appearance of fairness during the hearing on the child hearsay exception.

Under the appearance of fairness doctrine, "a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing." State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). A criminal defendant has the constitutional right to be tried and sentenced by an impartial court. Id. at 539; U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22. "The law requires more than an impartial judge; it requires the judge also appear to be impartial." Solis-Diaz, 187 Wn.2d at 540.

3

"A defendant's due process right to a fair trial is implicated where the trial court's activities 'turn a neutral judge into the state's advocate.'" State v. Mandefero, 14 Wn. App. 2d 825, 835, 473 P.3d 1239 (2020) (quoting State v. Moreno, 147 Wn.2d 500, 512, 58 P.3d 265 (2002)). A trial court should not assume the role of counsel or enter the "fray of combat." State v. Ra, 144 Wn. App. 688, 705, 175 P.3d 609 (2008) (quoting Egede-Nissen v. Crystal Mountain, Inc., 93 Wn.2d 127, 141, 606 P.2d 1214 (1980)). For example, in Ra the trial court improperly provided the State with theories that could support admission of improper other-crimes evidence. 144 Wn. App. at 705.

There is a presumption the trial court properly acted without bias or prejudice which can be overcome only by specific evidence establishing actual or potential bias. Mandefero, 14 Wn. App. 2d at 835. "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes a reasonable observer knows and understands all the relevant facts." Solis-Diaz, 187 Wn.2d at 540.

Escobar contends the trial court violated the appearance of fairness doctrine by aiding the State in building its case. According to Escobar, the trial court alerted the prosecution that it had failed to produce evidence that A.O.'s statements described sexual contact, educated the prosecution on how to supply the missing proof, and permitted the prosecution to reopen the hearing to satisfy its burden.

The initial child hearsay hearing took place over multiple days, concluding the day before trial. The State called several people to testify including A.O., K.O.,

4

A.O.'s grandfather and Aunt, the child interview specialist who interviewed A.O., the forensic nurse who conducted A.O.'s sexual assault examination at the hospital, and a detective on the case. At the conclusion of the testimony, the court inquired whether the State had any further witnesses or evidence for the child hearsay hearing. The State responded it had no additional evidence. The court then asked the prosecutor,

> [I]s the Court not first required to determine whether or not whatever statement the child is making to whatever witness is an actual description of sexual abuse? And how is the Court supposed to make that determination without hearing what the actual statement, for example, to the mother was? Because there was no testimony about what the child actually said to the mother from the mother or from the child.

The court continued,

> I had specifically reviewed all of my notes in anticipation that we would have argument about this issue today. And I, frankly, specifically was asking whether or not there is anything else in regards to the child hearsay hearing, because counsel stopped short of asking the mother what the child actually said to her.
>
> The mother testified that she saw there was a hug that she was suspicious about, and that she questioned her child about it; and she did not testify about what the child said.

The State responded that the burden was not to show the exact statements but the circumstances surrounding them and their reliability. The trial court responded that it could not make a determination under the child hearsay statute unless the statements describe sexual abuse which requires hearing the child's actual words. The State said it believed the evidence was in the record. The trial court disagreed, noting that "all of the questioning had stopped short, and all of the answers had stopped short, of any description of what the child actually said to the mother." And, no other witnesses had testified as to the actual words A.O. used when talking

5

to others. Moreover, the State had not offered the video of the child's forensic interview as evidence for the hearing. The court could not assume A.O. had provided descriptions of sexual assault for the purposes of a child hearsay ruling.

In response, the State requested an opportunity to put on additional evidence, either a proffer about the witness testimony expected at trial or to have the detective testify as to the statements made during interviews with the witnesses. The trial court informed the State that this evidence would not suffice for a child hearsay determination. The court explained that it needed to assess A.O.'s actual language to ensure it described sexual assault. In addition to finding that the child's words described sexual abuse, the court has to find that the requirements of the statute are met as to each witness through whom the testimony would be admitted. "For example, as to the mother, that testimony has to come not from Detective Jacqueline Arnett, it has to come from the mother."

The trial court also explained that the request to put on additional evidence was problematic because the hearing had already taken several days and testimony had concluded. The trial was set to start the next day with jurors arriving in the morning for opening statements. Escobar agreed that the hearing had concluded and the parties had indicated there was no additional evidence. He also noted that it was not the court's role to correct the problems with the State's case.

The State moved to reopen portions of the child hearsay hearing for additional evidence, citing the prosecutor's mistake due to lack of experience. Escobar opposed, noting that "[h]ad the Court simply ruled at the conclusion of the

6

evidence, the matter would be resolved now. It was only when the Court pointed out the deficits in the State's presentation that the State is now moving to reopen." Escobar acknowledged that the court had the discretion to reopen the case but did not believe it would be proper to delay the imminent trial for additional evidence on the child hearsay evidence. The court allowed the State to reopen the hearing.

Prior to the State's additional witness testimony, Escobar asked the court to reconsider its ruling and argued a violation of the appearance of fairness. Defense counsel told the court,

> I think it crosses into the concern about the fairness of the proceeding for Mr. Escobar when the Court alerts the State to that problem, educates them to what would be needed to potentially be able to prevail with regard to potential statements and then allows the State to reopen and present additional evidence to meet that burden.

The court responded that if it had merely ruled on the child hearsay issues, "I fully expect that I would have come back out this morning, and the jury would have been here at 9 a.m., and [the State] would have still moved the Court to reopen the child hearsay hearing." The State agreed that it would have asked to reopen upon the court's ruling.

The court allowed the State to elicit additional testimony. At the conclusion of the hearing, the court admitted some of the child hearsay testimony but found other statements inadmissible due to a lack of credibility.

Escobar argues that there is evidence of potential bias and it appears that the court was helping the State provide its child hearsay case by highlighting the deficiencies and how to cure them. But, if the court had denied the motion to admit the witnesses' testimony, the State would certainly have inquired as to the basis

of the decision. The court would then be expected to answer and provide the same information it did here, that the statute required a threshold determination that the statements described sexual abuse and the State had not identified the express statements to be considered. The State would have undoubtedly moved to reopen the proceeding at that time. The court would have granted that motion. If the State had then made the proffer of evidence as it suggested here, the court would have rebuffed the offer for not being direct evidence from each individual witness of the statements A.O. made to them. None of these decisions by the trial court would have been an abuse of discretion. And, ultimately the State would have presented the necessary testimony. The trial court, cognizant that the trial was about to start the next day, cut to the chase. In doing so, the court did not show bias or prejudice in favor of the State, assume the role of the prosecutor, or enter the fray of combat.

The trial court's colloquy with the State did not violate the appearance of fairness.[1]

II.    Sentencing Issues

A. Comparability

Escobar contends he received ineffective assistance of counsel because his trial attorney agreed that his federal conviction for conspiracy to commit murder in aid of racketeering was comparable to Washington's criminal conspiracy to commit first degree murder. For the purposes of calculating a defendant's offender score, "[f]ederal convictions for offenses shall be classified according to the

---

[1] Escobar has not assigned error to the trial court's decision to reopen the proceeding for the State to produce additional evidence. We do not consider this issue on appeal.

comparable offense definitions and sentences provided by Washington law." RCW 9.94A.525(3). If no comparable offense exists under Washington law, a federal felony conviction is scored as a class C felony. RCW 9.94A.525(3).

The court must conduct a two part test to determine the comparability of a foreign offense. State v. Thiefault, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). First, the court considers "whether the foreign offense is legally comparable—that is, whether the elements of the foreign offense are substantially similar to the elements of the Washington offense." Id. If the elements of the foreign offense are broader than Washington's version, "the sentencing court must then determine whether the offense is factually comparable—that is, whether the conduct underlying the foreign offense would have violated the comparable Washington statute." Id.

The State bears the burden of proving the comparability of convictions. In re Pers. Restraint of Cadwallader, 155 Wn.2d 867, 876, 123 P.3d 456 (2005). Generally, comparability is a question of law reviewed de novo. State v. Beals, 100 Wn. App. 189, 196, 997 P.2d 941 (2000). But, in this case, Escobar's counsel affirmatively agreed to the comparability of the federal conviction and the offender score. This results in a waiver of the right to directly appeal the offender score. See State v. Hickman, 116 Wn. App. 902, 907, 68 P.3d 1156 (2003) ("[W]here the alleged error involves a factual dispute, a defendant who stipulates that his out-of-state conviction is equivalent to a Washington offense has waived a later challenge to the use of that conviction in calculating his offender score").

In order to challenge his offender score, Escobar alleges that trial counsel's agreement to the comparability of the federal conviction to a Washington offense was ineffective assistance of counsel. To succeed on a claim of ineffective assistance of counsel, the defendant must demonstrate that defense counsel's representation fell below an objective standard of reasonableness and the deficient representation resulted in prejudice. State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice requires that "there is a reasonable probability that except for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

The State concedes that the federal conviction is broader than the Washington offense and that the record is insufficient to determine that the federal conviction is factually comparable to a Washington offense. Without defense counsel's agreement, the trial court could not have found the crimes legally or factually comparable. The federal conviction would have been considered a class C felony for the purposes of Escobar's offender score. RCW 9.94A.525(3). As a result, Escobar would have had an offender score of 1 with a standard sentence range of 57 to 75 months instead of the 62 to 82 month standard range sentence for an offender score of 2.[2] RCW 9.94A.510, 9.94A.515. Counsel's deficient

_____

[2] The State argued the federal felony conviction for conspiracy to commit murder in aid of racketeering was comparable to Washington's conspiracy to commit murder or first degree murder under accomplice theory. These offenses are both class A felonies. RCW 9A.28.040(3); RCW 9A.32.030(2); RCW 9A.08.020(3). As a "violent offense" either crime would contribute 2 points to Escobar's offender score. Former RCW 9.94A.030(55)(a)(i) (2018); RCW 9.94A.525(8). If the federal felony conviction is not comparable to a Washington offense, it is scored as a class C felony and scores as 1 point. RCW 9.94A.525(3), (8); former RCW 9.94A.030(34) (2018).

representation led to prejudice in the form of a higher offender score and higher standard sentencing range. We agree that Escobar received ineffective assistance of counsel and is entitled to a new sentencing hearing.

B. Community Custody Conditions

Escobar argues that two community custody conditions limiting his contact with minor children violate his fundamental right to parent his son.[3] Community custody conditions may be challenged for the first time on appeal.[4] State v. Wallmuller, 194 Wn.2d 234, 238, 449 P.3d 619 (2019).

We review community custody conditions for abuse of discretion and will reverse a manifestly unreasonable condition. State v. Bahl, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). "A trial court necessarily abuses its discretion if it imposes an unconstitutional community custody condition, and we review constitutional

---

[3] The two community custody conditions at issue are crime related prohibitions 14 and 18. Condition 14 states, "Do not initiate or prolong contact with minor children without the presence of an adult who is knowledgeable of the offense and has been approved by the supervising Community Corrections Officer." Condition 18 provides, "Do not remain overnight in a residence where minor children live or are spending the night."

[4] The State contends that Escobar failed to object to the sentencing conditions and cannot raise the issue for the first time on appeal based on State v. Peters, 10 Wn. App.2d 574, 581-82, 455 P.3d 141 (2019). According to Peters, "for an objection to a community custody condition to be entitled to review for the first time on appeal, (1) it must be manifest constitutional error or a sentencing condition that . . . is 'illegal or erroneous' as a matter of law, and (2) it must be ripe." Id. at 583 (quoting State v. Blazina, 182 Wn.2d 827, 834, 344 P.3d 680 (2015)). Here, Escobar claims exactly that—his community custody conditions are erroneous as a matter of law. Moreover, the Washington Supreme Court has established that community custody conditions may be challenged for the first time on appeal. See State v. Padilla, 190 Wn.2d 672, 677, 416 P.3d 712 (2018); State v. Bahl, 164 Wn.2d 739, 744-45, 193 P.3d 678 (2008). We recently conducted just such a review of similar community custody conditions. See State v. Peña Salvador, 17 Wn. App. 2d 769, 788, 487 P.3d 923 (2021).

questions de novo." Wallmuller, 194 Wn.2d at 238. Conditions that interfere with fundamental rights must be sensitively imposed and reasonably necessary to accomplish the essential needs of the State. State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

Parents have a fundamental constitutional right to the care, custody, and companionship of their children. Id. at 34. Because the State has a compelling interest in protecting children, "[t]he fundamental right to parent can be restricted by a condition of a criminal sentence if the condition is reasonably necessary to prevent harm to the children." State v. Ancira, 107 Wn. App. 650, 654, 27 P.3d 1246 (2001). The record must support that prohibiting contact is reasonably necessary to protect the child. State v. DeLeon, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020); State v. Martinez Platero, 17 Wn. App. 2d 716, 725, 487 P.3d 910 (2021) (remanding because the trial court failed to consider the defendant's relationship with his biological daughter and whether a no-contact provision was appropriate), review denied, 198 Wn.2d 1019, 497 P.3d 374 (2021). Remand is necessary where the trial court fails to consider a defendant's constitutional right to parent and whether a no-contact provision is appropriate. Martinez Platero, 17 Wn. App. 2d at 725.

Here, the trial court imposed the community custody conditions limiting Escobar's contact with minors without acknowledging it would prohibit contact with his biological son. The parties never mentioned the child or considered whether there was a need to protect him from contact with Escobar. The record is devoid of any support for the limitations to Escobar's constitutional right to parent his son.

12

We remand to the trial court to consider how the community custody conditions apply to Escobar's son.

An additional community custody condition requires Escobar to "[p]ay all restitution and legal financial obligations, including the costs of crime-related counseling and medical treatment required by A.O." Escobar contends the court lacked authority to impose these costs in the absence of a restitution order. The State properly concedes this condition is not authorized by the Sentencing Reform Act of 1981, chapter 9.94A RCW. A victim's counseling and medical costs are correctly imposed as restitution under RCW 9.94A.753(3). See State v. Land, 172 Wn. App. 593, 604, 295 P.3d 782 (2013) (striking community custody condition ordering restitution where the State failed to seek restitution at the sentencing hearing and no restitution was imposed). In this case, the restitution order includes A.O.'s treatment in the hospital emergency department on the day she disclosed the abuse. These are the only compensable medical costs. The trial court abused its discretion in ordering additional compensation as a community custody condition and the condition should be stricken on remand.

C. Legal Financial Obligations

Escobar's judgment and sentence includes a provision requiring payment of community custody supervision fees. Escobar argues the court intended to waive all nonmandatory legal financial obligations (LFOs) so the supervision fees should be struck.

Community custody supervision fees are discretionary LFOs which can be waived by the trial court. State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199,

13

review denied, 195 Wn.2d 1022, 464 P.3d 198 (2020); RCW 9.94A.703(2)(d). "Where the record demonstrates that the trial court intended to impose only mandatory LFOs but inadvertently imposed supervision fees, it is appropriate for us to strike the condition of community custody requiring these fees." State v. Peña Salvador, 17 Wn. App.2d 769, 791-92, 487 P.3d 923 (2021).

Here, the record is inconclusive. Escobar requested waiver of all nonmandatory LFOs. The court imposed only the mandatory victim penalty assessment and DNA (deoxyriboneucleic acid) collection fee. But, the court did not explicitly waive all nonmandatory LFOs or make a finding that Escobar is indigent. On resentencing, the court should consider on the record whether it intends to waive the supervision fees.

We affirm the conviction and remand for resentencing.

_Appelwick, J._

WE CONCUR:

_Coburn, J._      _Verallen, J._