IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

STATE OF WASHINGTON,

               Respondent,

            v.

LUIS RUBEN IBARRA,

               Appellant.

No. 84771-6-I

ORDER GRANTING MOTION
FOR RECONSIDERATION,
WITHDRAWING OPINION,
AND SUBSTITUTING OPINION

Respondent State of Washington moved for reconsideration of the opinion filed on March 25, 2024. Appellant Luis Ibarra filed an answer. A panel of the court has considered the motion pursuant to RAP 12.4 and has determined that respondent's motion for reconsideration should be granted, the opinion should be withdrawn, and a substitute opinion be filed.

Now, therefore, it is hereby

ORDERED that the respondent's motion for reconsideration is granted; and it is further

ORDERED that the unpublished opinion filed on March 25, 2024 is withdrawn; and it is further

ORDERED that a substitute unpublished opinion be filed.

FOR THE COURT:

_____
           Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>LUIS RUBEN IBARRA,<br><br>                    Appellant. | No. 84771-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Luis Ibarra, a registered nurse, was charged with and convicted of rape in the second degree after he assaulted a patient while she was nearly immobile and recovering from spinal surgery. He was sentenced to 102 months to life. On appeal, Ibarra asserts that the trial court erred in denying his motion for mistrial based on irrelevant and prejudicial testimony by his ex-wife and in determining that he opened the door to evidence that he had been previously counseled or warned about sexual contact with patients. He also alleges cumulative error and asks for the court to remand to strike a victim penalty assessment, DNA[1] collection fees, and the community custody condition requiring urinalysis and/or breathanalysis upon request.

In a statement of additional grounds, Ibarra argues that the trial court erred in improperly refusing to dismiss a juror and by placing improper time restraints on the trial. Ibarra asserts ineffective assistance of counsel and a lack

---

[1] Deoxyribonucleic acid.

of sufficient evidence to support his conviction. Finding the majority of his arguments unpersuasive we affirm the conviction, however, we remand for the court to strike the victim penalty assessment, DNA collection fee, and the community custody condition requiring urinalysis and/or breathanalysis upon request.

FACTS

Background

In October 2020, Luis Ibarra was a registered nurse working in the neuroscience-epilepsy unit of Swedish Hospital (Swedish) in Seattle, Washington. The unit mostly houses patients receiving pre- or postoperative care. I.W. was one such patient, recovering from spinal surgery. The surgery was intensive, resulting in titanium screws in her spine and 17 staples in her back to keep the incisions closed. I.W. needed assistance for even slight adjustments in position. She was also in a significant amount of pain. Ibarra was I.W.'s night nurse for the second night of her hospital stay.

Over the course of the night, I.W.'s pain remained intense, despite having received as much pain medication as was allowed. She informed Ibarra that the medication was not working and Ibarra offered ice packs. I.W. declined. In the early hours of the morning, she asked about additional medication but Ibarra offered alternative methods instead. He began with aromatherapy, pinning cotton balls soaked in orange oil to I.W.'s hospital gown, which smelled nice but did not alleviate any pain. Ibarra then offered reflexology, which is a form of massage that targets pressure points in the hands and feet. Ibarra was aware

2

that, per Swedish's rules, he was prohibited from performing reflexology on a patient without a third-party present. He nevertheless offered the massage and I.W. agreed. Ibarra massaged each hand which again failed to reduce I.W.'s pain. Ibarra next offered a foot massage and I.W. agreed. Ibarra began by putting lotion on I.W.'s left foot, before moving his hands all the way up her leg. When Ibarra reached the top of I.W.'s left thigh, his hand bumped her groin. He then moved to I.W.'s right foot, worked his way up her right leg, and when Ibarra reached the top of I.W.'s right thigh, moved his hand between her legs, inserted his fingers into her vagina, and began to rub her clitoris. He was not wearing gloves. Eventually, Ibarra asked I.W. if she had an orgasm and she replied that she had. I.W. later testified that she lied so he would stop touching her. Ibarra then left the room.

I.W. left the hospital a few days later and immediately began taking care of her husband, three dogs, and a friend, despite remaining in acute pain. In early November, as she started to more fully recover, I.W. started having "flashbacks" of the experience. She took notes on these memories and, about three weeks after the incident, called both the police and Swedish's hospital security. Swedish fired Ibarra in November 2020.

<u>Arrest and Pre-Trial Motions</u>

In December 2020, the Seattle Police Department interviewed I.W. and opened a case, assigning Detective Matt Atkinson as an investigator. Detective Atkinson reached out to Ibarra, who went to the police station to be interviewed. In contrast to I.W.'s account, Ibarra stated that he had not touched I.W.'s

genitals. He recounted that he had performed reflexology only on I.W.'s hands and feet, never moving up her legs. Ibarra then described that, while he was touching her, I.W. masturbated herself to orgasm. He acknowledged that he did not discourage the behavior, framing it as pain relief. Detective Atkinson repeatedly asked Ibarra if he was telling the truth, noting the differences between his description and I.W.'s account. Ibarra confirmed that he was telling the truth. At the close of the interview, Detective Atkinson placed Ibarra under arrest for rape in the second degree and indecent liberties.[2]

Before trial, the State moved to admit another patient's similar experience with Ibarra under ER 404(b) as evidence of a common scheme or plan. This first incident took place in 2005 at a different hospital and involved a patient alleging that Ibarra inappropriately touched her genitals while checking a catheter placement. Ibarra admitted to unprofessional behavior and his nursing license was suspended but the patient did not press charges.

The court initially ruled that the 2005 incident was admissible for the rape charge because related sanctions tended to rebut Ibarra's consent defense. The court ruled that it was admissible for the indecent liberties charge as well to show common scheme or plan and evidence of knowledge. The State later moved to

---

[2] The indecent liberties charge arose out of a 2019 incident that had not been investigated until after the 2020 allegation. This incident involved a patient alleging that Ibarra had pinched her nipple during a massage while she was recovering from surgery at Swedish.

dismiss the indecent liberties charge[3] and the court reevaluated whether to admit the 2005 incident. On this second pass, the court ruled that the evidence was not admissible to show a common scheme or plan but that the defense might open the door to related evidence by presenting their own evidence of consent.

Trial

The case proceeded to trial in October 2022. While testifying in his own defense, Ibarra gave a vastly different account of the incident than he did while talking to the police. Ibarra stated that he offered reflexology as a "last resort," despite knowing that it violated hospital rules. He asserted that when he reached I.W.'s groin, she told him to "go for it," which he understood as a command to touch her genitals. He then recounted touching I.W. as she had described, but denied any penetration. He testified that after I.W. orgasmed, she thanked him and promised it would stay "just between [them]." He also admitted that he had lied to the police, stating that he did so to avoid being fired.

Because Ibarra testified that he was aware he was not allowed to perform reflexology without a third-party present, the State argued that he opened the door to questions about any warnings or counseling he received following his prior misconduct. Defense counsel objected, asserting that the evidence was not relevant and was more prejudicial than probative. The court determined that Ibarra had opened the door, but only as to warnings and counseling from the

---

[3] The State moved to dismiss the indecent liberties charge because the patient from the 2019 incident was medically unavailable for the foreseeable future and the State could not proceed without their testimony.

hospitals, not patient allegations. The State proceeded to use evidence of prior warnings to rebut Ibarra's assertion of consent.

Ibarra's ex-wife Laura Ibarra testified.[4] The State intended to use Laura's testimony to establish that Ibarra had lied to the police about his interaction with I.W. However, Laura's responses to the questions presented by the State involved seemingly irrelevant concerns about Ibarra's relationship with his sons, the large response law enforcement had mounted to find Ibarra, the fact that Ibarra had been jailed, and that Ibarra had lied to the police about owning guns. Defense counsel immediately objected to the statements and the court sustained the objections. In a side-bar away from the jury, the court reprimanded the State for eliciting the testimony. The State made clear that they had warned Laura away from those statements and did not intend to produce the information. Defense counsel moved for a mistrial, asserting that Ibarra was so prejudiced by Laura's statements that he required a new trial. The court denied the motion, noting that the State did not intentionally elicit the evidence[5] and that as the court had immediately sustained any objections, the jury knew to disregard what they heard.

---

[4] As the appellant and his ex-wife share the same last name, we will address Laura by her first name. We intend no disrespect.

[5] At oral argument, the State argued briefly that it believed Laura's testimony that Ibarra had lied about guns would be admissible. But the State repeatedly asserted that it did not intend to elicit that evidence and had warned Laura away from mentioning it. Given all of the State's assertions, the former does not constitute a concession that the State purposefully elicited the testimony.

The jury found Ibarra guilty. The court sentenced Ibarra to 102 months to life in prison. The court also waived most mandatory fees but imposed the then-mandatory DNA collection fee and victim penalty assessment. It further required Ibarra to submit to urine and breath analysis testing upon the request of his corrections officer.

Ibarra appeals.

ANALYSIS

Motion for Mistrial

Ibarra contends that the trial court erred in failing to grant a mistrial based on several prejudicial and inadmissible statements during his ex-wife's testimony. He objected to the testimony at trial. The court did not err in denying the mistrial because any irregularities were not serious and the statements were both cumulative and able to be cured.

We review a trial court's denial of a motion for a mistrial for an abuse of discretion. State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). A trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. State v. Lord, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). A mistrial is appropriate " 'only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly.' " State v. Rodriguez, 146 Wn.2d 260, 270, 45 P.3d 541 (2002) (quoting State v. Mak, 105 Wn.2d 692, 701, 718 P.2d 407, cert. denied, 479 U.S. 995, 107 S. Ct. 599, 93 L. Ed. 2d 599 (1986)). The trial court is

in the best position to judge prejudice. State v. Garcia, 177 Wn. App. 769, 777, 313 P.3d 422 (2013).

We use a three-part test to determine whether the defendant was so prejudiced as to require a new trial. State v. Taylor, 18 Wn. App. 2d 568, 579, 490 P.3d 263 (2021). "We consider (1) the seriousness of the irregularity, (2) whether the statement at issue was cumulative of other properly admitted evidence, and (3) whether the irregularity was able to be cured by an instruction to disregard the improper testimony, which the jury is presumed to follow." Taylor, 18 Wn. App. 2d at 579.

1. Seriousness of Irregularity

When reviewing an irregularity at trial, we consider who was responsible for the errant testimony. Taylor, 18 Wn. App. 2d at 581. "When trial irregularities are brought about by one of the attorneys, as opposed to a noncompliant witness, the seriousness increases." Taylor, 18 Wn. App. 2d at 581.

Here, the trial irregularities were the result of a noncompliant witness. The State informed the court, in a side-bar away from the jury, that it had no intention of eliciting Laura's testimony about law enforcement's search for Ibarra, that he was ultimately jailed, that he might ruin his son's birthday, or that he lied to the police about owning guns. As evidenced by the State's opening argument, the State only intended to elicit the fact that Ibarra had lied to the police about sexual conduct with I.W., a fact that Ibarra himself conceded. And Ibarra acknowledges that lack of intent, noting in his opening brief that the prosecutor admonished

8

Laura to avoid those matters. Because the improper statements are the result of a noncompliant witness, the seriousness of the irregularities decreases. Ibarra asserts that the irregularities were serious because Laura's volunteered comments told the jury that Ibarra, whose defense depended on the jury believing him, was a liar. But Ibarra testified that he lied to the police. His own testimony, admitting that he lied to the police about the topic of the case at hand, is much more likely to have an impact on Ibarra's credibility than his ex-wife's stricken testimony suggesting he lied about irrelevant information.

In addition, while Laura's description of the law enforcement response and the fact that Ibarra was ultimately jailed may have painted Ibarra in a negative light, neither statement was beyond the jury's realm of assumption. Given the subject matter of this case, it is not unlikely that jurors would assume that law enforcement had been involved and that Ibarra had been jailed at some point in the process. It does not follow that the jury would assume guilt as a result.

And finally, Laura's statements about their children, while clearly irrelevant, are not likely to sway the outcome of the case. None of the trial irregularities are serious enough to warrant a mistrial.

2. Cumulative Statement

Ibarra's primary concern surrounding Laura's testimony is that she makes him out to be a liar. Laura did testify as such twice, stating that Ibarra lied to the police when he told them he had not touched I.W. and that he had lied about owning guns. But Ibarra explicitly testified that he lied to the police. In fact, he testified that he lied to the police specifically about whether he touched I.W. So

Laura's first statement was clearly cumulative of his own testimony. And while Laura's irrelevant testimony that Ibarra had lied about owning guns provided the jury with more information that he had been dishonest, any impact it had on his credibility was similarly cumulative.

3. Able to be Cured

" 'Courts generally presume jurors follow instructions to disregard improper evidence.' " State v. Christian, 18 Wn. App. 2d 185, 199, 489 P.3d 657 (2021) (quoting State v. Russell, 125 Wn.2d 24, 84, 882 P.2d 747 (1994)). Defense counsel immediately objected and moved to strike the testimony. The court sustained the objection and struck the testimony from the record. The court then provided the jury with a clear instruction, stating "[w]hen I sustain an objection, whether or not I tell you to disregard, you don't consider whatever it was I sustained the objection to." And the court reiterated that instruction twice before deliberations. With the extent of the court's instruction to disregard the improper statements and the presumption that juries follow those instructions, any irregularity was able to be cured.

The court did not err in denying Ibarra's motion for mistrial.

Evidentiary Ruling

Ibarra asserts that the trial court erred in determining that he opened the door to having been previously counseled or warned about sexual contact with patients. Ibarra opened the door by testifying that I.W. consented to the contact. We review a trial court's ruling on admissibility for abuse of discretion. State v. Jennings, 199 Wn.2d 53, 59-60, 502 P.3d 1255 (2022). A trial court abuses its

discretion if " 'no reasonable person would take the view adopted by the trial court.' " Jennings, 199 Wn.2d at 59 (quoting State v. Atsbeha, 142 Wn.2d 904, 914, 16 P.3d 626 (2001)). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. And the open-door doctrine is a theory of expanded relevance. State v. Rushworth, 12 Wn. App. 2d 466, 474, 458 P.3d 1192 (2020).

"The open door doctrine permits trial courts to admit evidence on a subject normally barred on policy or prejudice grounds, so long as the party who otherwise stands to benefit from the exclusion has increased the subject's relevance through actions at trial." Rushworth, 12 Wn. App. 2d at 475. A party may waive protection from a usually "forbidden" topic by addressing the subject themselves. Rushworth, 12 Wn. App. 2d at 473. At that point, the opposing party is "entitled to respond." Rushworth, 12 Wn. App. 2d at 473.

Ibarra placed any prior admonishment informing him not to engage in any sexual contact with patients before the jury as a matter of impeaching his credibility, when he testified about being surprised by the sexual encounter with I.W. He testified that the encounter was unusual and unexpected, stating "[y]eah, I told her that that was kind of, you know, weird for me. . . . you know, unusual, unpredicted." That is belied by the fact that he had been trained about such an encounter twice before.

Ibarra also called his credibility into question when he testified that he interpreted I.W.'s statement of "go for it," which she denies saying, as a

"command" he had to obey. His prior training is relevant to establish that that belief is unreasonable. Having been informed not to engage in any sexual conduct with a patient, Ibarra knew not only that he could disobey that "command," but that he was required to refuse.

Additionally, the court had specifically cautioned Ibarra that any education or counseling he received following prior misconduct could become admissible as rebuttal evidence if he introduced evidence of consent. Ibarra's statement that I.W. had told him to "go for it," suggests that she not only consented to the encounter, but that she initiated it.

Because Ibarra addressed the subject of I.W.'s consent as well as the concept that this was an isolated incident he could not have anticipated, the court did not abuse its discretion in determining that he opened the door to the State's cross-examination on prior education.

### Cumulative Error

Ibarra argues that, even if either asserted error alone is not enough to warrant reversal, the combined effects of both denied him a fair trial under the cumulative error doctrine. There is no error to warrant reversal.

The cumulative error doctrine applies when "several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial." State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). "The test to determine whether cumulative errors require reversal of a defendant's conviction is whether the totality of the circumstances substantially prejudiced the defendant and denied him a fair trial." In re Pers. Restraint of

12

Cross, 180 Wn.2d 664, 690, 327 P.3d 660 (2014) (abrogated on other grounds by State v. Gregory, 192 Wn.2d 1, 427 P.3d 621 (2018)). The defendant bears the burden of proving cumulative error. In re Pers. Restraint of Lord, 123 Wn.2d 296, 332, 868 P.2d 835 (1994).

Here, Ibarra failed to establish any trial errors. The court did not err in denying Ibarra's motion for mistrial or in determining that Ibarra opened the door to evidence of prior warnings and education around sexual contact with patients. Although some of Laura's testimony was improper, the court struck that testimony from the record and Ibarra cannot establish that the statements she made resulted in any prejudice.

Because reversal under the cumulative error doctrine requires circumstances that substantially prejudiced the defendant and Ibarra has failed to show error or prejudice, reversal is not warranted.

Community Custody Conditions

Ibarra asserts that the community custody requirement that he be available for drug and alcohol testing at the request of his community corrections officer (CCO) or treatment provider unconstitutionally invades his right to privacy. We remand to strike that community custody condition.

Constitutional challenges to community custody may be raised for the first time on appeal. State v. Reedy, 26 Wn. App. 2d 379, 395, 527 P.3d 156, review denied, 1 Wn.3d 1029 (2023). Generally, sentencing courts may impose and enforce crime-related prohibitions and affirmative conduction as a condition of community custody. State v. Martinez Platero, 17 Wn. App. 2d 716, 725-26, 487

P.3d 910 (2021). That said, there must be "a reasonable relationship between the condition and the defendant's behavior." Martinez Platero, 17 Wn. App. 2d at 726.

The State recognizes that alcohol and drug use did not contribute to Ibarra's offense. The State asserts, however, that the legislature has expressed an intent that the rehabilitation of felony offenders may include alcohol and drug prohibitions even if their use did not contribute to the crime. Pointing to a singular statute and a handful of unpublished cases, the State asks this court to carefully consider those cases "anew," and hold that the requirement to submit to urinalysis and breath testing is sufficiently narrowly tailored regardless of whether alcohol or drugs were involved in Ibarra's crime. We decline to do so. Current binding caselaw provides that there must be a reasonable relationship between community custody conditions requiring urinalysis and/or breathanalysis and the defendant's behavior and the State cannot establish such a relationship. We remand for the court to strike the community custody condition requiring urinalysis and/or breathanalysis upon request.

<u>Victim Penalty Assessment and DNA Collection Fee</u>

Ibarra contends that the victim penalty assessment (VPA) should be stricken because he is indigent. He also asserts that the DNA collection fee should be stricken. The State does not object. We remand for the court to strike the VPA and DNA collection fees from the judgment and sentence.

In July 2023, the legislature amended RCW 7.68.035 to prohibit the imposition of a VPA if the court finds a defendant indigent at the time of

sentencing. The legislature also eliminated DNA collection fees. Recently amended RCW 43.43.7541 provides that the court shall waive any DNA collection fee previously imposed upon a motion by the defendant. These amendments apply retroactively in this case because Ibarra's appeal was pending when the amendments took effect. State v. Ellis, 27 Wn. App. 2d 1, 17, 530 P.3d 1048 (2023).

Here, neither party disputes that Ibarra was indigent at sentencing, and that the VPA should be stricken. Likewise, neither party disputes that the DNA collection fee should be stricken. On remand, we instruct the court to strike both fees.

Statement of Additional Grounds

In a statement of additional grounds, Ibarra asserts that the trial court improperly refused to excuse a juror based on their ethnicity, that the court put improper time constraints on the length of the trial, that his counsel was ineffective, and that there was insufficient evidence to support his conviction. We disagree.

A defendant may submit a pro se statement of additional grounds under RAP 10.10. We only consider issues raised in that statement of additional grounds if they adequately inform us of the "nature and occurrence of the alleged errors." State v. Calvin, 176 Wn. App. 1, 26, 316 P.3d 496 (2013). We do not consider arguments repeated from the briefing. RAP 10.10(a).

1. <u>Improper Refusal to Excuse Juror</u>

Ibarra argues that the court denied dismissal of a juror based solely on her desire for ethnic diversity and in violation of Ibarra's right to challenge jurors for cause during voir dire. We disagree.

We review a trial court's decision to remove, or decline to remove, a juror for abuse of discretion. <u>State v. Hopkins</u>, 156 Wn. App. 468, 474, 232 P.3d 597 (2010). A trial court abuses its discretion if its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. <u>Lord</u>, 161 Wn.2d at 283-84.

RCW 2.36.110 states, "it shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service."

Defense counsel challenged the juror at issue on the basis that she was a physician and may have been in a position to second-guess testimony about healthcare standards and the varying responsibilities of doctors and nurses. Defense counsel was also concerned that the juror had been given training "to avoid exactly this type of thing." The court noted, however, that the juror did not have any particular awareness of nursing standards and that "doctors are given training on this, just as lawyers are and every other professional." The court also pointed out that this juror, in contrast to a juror who had been excused, gave no indication that she was unable to separate her position and responsibilities from

16

the allegations against Ibarra.  The court concluded that there was no basis to strike this juror as compared to any other witness.  Because there was no "cause" upon which to excuse the juror, the court did not violate Ibarra's right to challenge jurors for cause.

2. <u>Improper Time Restraints</u>

Ibarra asserts that the court put improper time restraints on the trial that prevented defense counsel from addressing pertinent issues and that allowing I.W. to take breaks during testimony portrayed a sympathetic and biased court. This argument is unpersuasive.

"The trial court has broad discretion to make trial management decisions . . . because the trial court is generally in the best position to perceive and structure its own proceedings."  <u>State v. Bejar</u>, 18 Wn. App. 2d 454, 460-61, 491 P.3d 229 (2021).  We will not reverse a trial court's decision unless it is manifestly unreasonable or based on untenable grounds or reasons.  <u>State v. Dye</u>, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).

Ibarra first points to the fact that the court casually stated timeline expectations throughout the trial.  He notes that the court made comments about not wanting to lose time and promised the jury that they would be done by a certain day.  He does not, however, explain how this interfered with defense counsel's ability to present its case.  He also does not articulate any of the "pertinent issues and concerns" that were interfered with because of to the court's time constraints.

17

Ibarra next argues that the court "coddled" I.W. by allowing her to take breaks during testimony. This then supposedly cut into Ibarra's time to present his case while suggesting a bias in her favor. But again, Ibarra fails to establish that allowing I.W. to take breaks during testimony prejudiced him in any way. The court stated that it told I.W. she could take a break because I.W. was beginning to cry. The court elaborated, stating "I do this for all witnesses who appear to be getting emotional on the stand. . . . it wouldn't, frankly, improve the fairness of our proceedings for the Court to allow people to just burst into tears and have emotional displays on the stand." Ibarra has not shown how forcing I.W. to testify through her emotional response, as opposed to allowing her a break, would avoid a bias in her favor. And there is no evidence that the few minutes of respite had any impact, let alone a negative impact, on Ibarra's time before the court.

The court did not impose any improper time restraints and did not abuse its discretion in allowing I.W. to pause during her testimony.

3. Ineffective Assistance of Counsel

Ibarra contends that defense counsel was ineffective in failing to introduce evidence that Ibarra believed demonstrates I.W. had motive to fabricate an assault. He argues that his chance at a fair trial was hindered "because [defense counsel] wanted to maintain a professional, non-confrontational reputation." This is again unpersuasive.

We review ineffective assistance of counsel claims de novo. State v. Estes, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017). The Sixth Amendment to the

United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel.  Estes, 188 Wn.2d at 457.  To prevail on an ineffective assistance claim, the defendant must establish that (1) counsel's performance was deficient, and (2) that deficiency resulted in prejudice.  State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).  Performance is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances."  State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).  To show prejudice, the appellant must show a " 'reasonable probability' " that but for the deficient performance, the outcome of the proceedings would have been different.  State v. Jones, 183 Wn.2d 327, 339, 352 P.3d 776 (2015) (quoting Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  There is a strong presumption that representation was effective.  State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).  And "[w]hen counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient."  Kyllo, 166 Wn.2d at 863.

Ibarra provides four reasons that he contends establish I.W. had motive to lie and that defense counsel was unwilling to argue at trial.  He asserts that she felt too guilty to face her husband after consenting to sexual behavior with someone else, that her husband was older than she was so it had likely "been a while" for I.W., that she had been assaulted before and had a "vindictive nature towards men," and that she was hoping for a big settlement from Swedish.

19

Defense counsel's choice not to pursue any of these theories does not fall below an objective standard of reasonableness. Ibarra does not provide any evidence to support any of the theories nor present any legal argument regarding them. Rather, his proposed evidence centers on accusing I.W. of lying, embarrassing her or exploiting her past trauma. And while Ibarra asserts that his proposed reasons establish motive for I.W. to lie, they involve pure conjecture. There is no evidence to support that I.W. lied for any of these reasons. It was not unreasonable for defense counsel to choose not to raise these issues at trial.

As to the second factor, Ibarra cannot establish that, had defense counsel introduced the fact that her husband was older than she was or had cross-examined I.W. on the fact that she had been sexually abused in the past, the outcome of the proceedings would have been any different. Ibarra is correct in that this case centered on credibility. However, Ibarra's proposed statements, not backed by evidence, were unlikely to diminish I.W.'s credibility. In fact, it is not unreasonable that Ibarra's attorney may have determined that it would have harmed Ibarra's case or diminished his credibility to highlight irrelevant but highly personal facts about I.W.

Defense counsel was not deficient.

4. Sufficient Evidence

Finally, Ibarra asserts that there was insufficient evidence to support the conviction of rape in the second degree because I.W.'s testimony was vague as to penetration. We disagree.

In reviewing a challenge to the sufficiency of evidence, the inquiry is whether by "viewing the evidence 'in a light most favorable to the State, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt.' " State v. Sweany, 174 Wn. 2d 909, 914, 281 P.3d 305 (2012) (internal quotation marks omitted) (quoting State v. Randhawa, 133 Wn.2d 67, 73, 941 P.2d 661 (1997)).

RCW 9A.44.050(d) defines rape in the second degree as sexual intercourse "[w]hen the perpetrator is a health care provider, the victim is a client or patient, and the sexual intercourse occurs during a treatment session, consultation, interview, or examination." Sexual intercourse includes its "ordinary meaning," as well as "any penetration of the vagina or anus however slight, by an object [including a body part] . . . except when such penetration is accomplished for medically recognized treatment or diagnostic purposes." RCW 9A.44.010(14)(b).

Ibarra asserts that there was insufficient evidence to establish that he penetrated I.W.'s vagina, and that as there were no threats, coercion, or violence, that he did not rape her. Because threats, coercion, or violence are not required to establish rape in the second degree, that is irrelevant. And I.W. consistently recounted that Ibarra had put his fingers inside of her body. She first informed Detective Atkinson that Ibarra put his fingers inside her vagina. On direct examination, I.W. reiterated multiple times that Ibarra put his fingers "right inside of [her]." The fact that I.W. did not explicitly state that she was penetrated

21

does not mean there was insufficient evidence to determine that there was penetration.

Given I.W.'s testimony, the jury had sufficient evidence to convict Ibarra of rape in the second degree.

We affirm the convictions and remand for the court to strike the VPA, DNA collection fee, and community custody condition requiring urinalysis and/or breathanalysis upon request.

_Smith, C.J._

WE CONCUR:

_Birk, J._        _Mann, J._