IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. SUGANTHAN T. KATHIRESON, Appellant. | No. 83511-4-I DIVISION ONE UNPUBLISHED OPINION |

DÍAZ, J. — In the appeal of his conviction for several counts of child molestation, Suganthan T. Kathireson ("Kathireson") argues that his counsel was constitutionally ineffective and that the prosecutor engaged in misconduct in various overlapping ways. He further claims that, following his conviction, the trial court imposed an overly broad no-contact order, which also was improperly informed by a prior dismissed criminal charge overseas. We affirm the convictions, concluding that his counsel was not ineffective or that any misconduct did not prejudice him. However, we remand the matter for the trial court to address the

Citations and pin cites are based on the Westlaw online version of the cited material.

parameters of its no-contact order as to how it applies to Kathireson's non-victim children.

I.   FACTS

Kathireson has six children, the oldest of whom is A.K.  The family shared an apartment in Sammamish, with several other family members.  Beginning in April 2016, when A.K.'s mother was out of the country, A.K. testified that Kathireson directed her to sleep in his bed and, one evening, sexually assaulted her.  A.K. testified that this behavior occurred intermittently and escalated later that year to include more serious forms of assault.  A.K. testified that she was too scared to report the abuse and eventually grew "numb" to it.  A.K. testified that she believes there were 10-15 such incidents until the summer of 2017.

At that time, A.K. ultimately disclosed the abuse to Kathireson's immediately younger sister.  A.K. testified that she was "shaking and crying because it was the first time that I had ever told another adult."  She testified that she "couldn't stop crying or shaking and at that point [she] couldn't even talk."  Kathireson's sister called a family meeting including Kathireson's wife, but, finding no relief from her family, A.K. later disclosed the abuse to her friend in 2018, whose mother called Child Protective Services.  A social worker shortly thereafter interviewed A.K., who became "very emotional" and started crying.

During discovery, it was learned that Kathireson had been charged with a "child sex abuse case" in Guam. The case was dismissed, and the alleged victim was not available to testify. The trial court excluded any reference to the Guamanian charges at trial.

In November 2021, Kathireson was found guilty of two counts of child molestation in the second degree and two counts of child molestation in the third degree.

At sentencing in December 2021, the trial court imposed the standard range and, as a condition of community custody, ordered that Kathireson "[h]ave no direct or indirect contact with minors unless [his] community corrections officer gives advance approval." Kathireson was also prohibited from holding "any position of authority or trust involving minors." There is nothing in the record reflecting that the trial court considered how these orders would affect Kathireson's right to parent his five other non-victim children or whether other types of contact with them would be appropriate.

## II.    ANALYSIS

On appeal, Kathireson claims he was denied effective assistance of counsel based on his counsel's failures to object to excluded or inadmissible evidence and improper argument or testimony; in particular, when the State's lawyers or witnesses (1) allegedly alluded to the Guam charge, (2) prejudicially noted A.K.'s

trauma or otherwise vouched for her testimony (which he also claims was prosecutorial misconduct), and (3) when his counsel failed to request an expert witness instruction. Kathireson additionally argues that the State committed misconduct by (and his counsel was constitutionally ineffective in not objecting to the State) misstating when the presumption of innocence dissipates. Kathireson further argues that these errors cumulatively denied him his right to a fair trial. Kathireson also argues that, at sentencing, the trial court abused its discretion in imposing a no-contact order that improperly deprived him of contact with his children who were not the victims of his crime and allegedly considering the Guam charge. Finally, in a statement of additional grounds, Kathireson himself argues that the evidence was insufficient as a matter of law and that the trial court erroneously denied his trial counsel's request for an extension of time to commence trial.

### A. Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, an appellant must prove that his counsel's performance was both deficient and prejudicial. State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (applying Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). The failure to prove either prong ends our review. State v. Brown, 159 Wn. App. 366,

371, 245 P.3d 776 (2011). This court reviews allegations of ineffective assistance de novo. State v. Wafford, 199 Wn. App. 32, 41, 397 P.3d 926 (2017).

As to the first prong (deficiency), counsel is strongly presumed to have been effective and "[t]he threshold for the deficient performance prong is high. . ." State v. Vazquez, 198 Wn.2d 239, 247, 494 P.3d 424 (2021); In re Pers. Restraint of Caldellis, 187 Wn.2d 127, 140, 385 P.3d 135 (2016). If a defendant centers their claim of deficiency on their attorney's failure to object, then "the defendant must show that the objection would likely have succeeded." Vazquez, 198 Wn.2d at 248, quoting State v. Crow, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019). "Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal." Id. However, if defense counsel fails to object to *inadmissible* evidence, then they have performed deficiently, and reversal is required if the defendant can show the result would likely have been different without the inadmissible evidence. Crow, 8 Wn. App. at 508-09.

To establish the second prong (prejudice), Kathireson must prove that, but for the deficient performance, there is a reasonable probability that the outcome in his trial would have been different. In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 487, 965 P.2d 593 (1998). In analyzing prejudice, this Court should not look at the error in isolation, but in the context of the total argument, the issues in the case,

the evidence, and the instructions given to the jury.  State v. Warren, 165 Wn.2d 17, 28, 195 P.3d 940 (2008).

### 1. The Guam Charge

Kathireson first argues that his trial counsel's representation was per se deficient because he failed to object, request a curative instruction, or move for a mistrial when a witness referred to "past allegations."  He claims this reference to "past allegations" was to the charge in Guam, which had been ruled inadmissible. We disagree.

Kathireson's trial counsel was not deficient for not objecting when the witness, Detective Beth Thomsen, mentioned "past allegations" because, from the context of the total argument, the issues in the case, and the evidence, it is clear that Detective Thomsen was referring to admissible evidence.  Alternatively, if the comments somehow referred to the Guam charge, the comment was so isolated, "out of the blue," and contextless that it was a reasonable trial tactic not to overemphasize the remark with an objection, and Kathireson otherwise does not show the result would likely have been different without the comment.

As to the former, the phrase "past allegations" was raised in the context of "the allegation that came forward ... that day," i.e., those allegations presently on trial.  Thus, that statement that Kathireson's wife already "was aware of [*them*]," referred to the fact that Kathireson's sister had called a family meeting and

disclosed A.K.'s allegations, which this witness was aware of. Any alleged deficiency is considered within its surrounding context. See State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

On the "strong presumption" that counsel is effective, Kathireson's trial counsel appears to have recognized this context, which explains the lack of an objection. Kathireson, in his statement of additional grounds for review, himself even acknowledges that "the case in Guam was never brought up during trial. . ."

Alternatively, even if that phrase referred to the charge in Guam, trial counsel may have declined to object as a reasonable trial tactic, given the passing and isolated nature of the remark. In re Pers. Restraint of Davis, 152 Wn.2d 647, 714, 101 P.3d 1 (2004). Courts recognize that attorneys can appropriately withhold a legally valid objection to avoid emphasizing damaging evidence. Vazquez, 198 Wn.2d at 248; State v. Kloepper, 179 Wn. App. 343, 355, 317 P.3d 1088 (2014).

Regardless, Kathireson does not seriously address, let alone show, a reasonable probability that the outcome of the proceeding would have been different but for his counsel's unprofessional errors, where a reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." State v. Grier, 171 Wn.2d 17, 34, 246 P.3d 1260 (2011). An at-best vague, singular, fleeting comment in that context did not create such prejudice.

2. Vouching

Kathireson next argues that his trial counsel failed to object to multiple instances of a witness or litigant commenting upon the credibility and/or vouching of a witness. Specifically, Kathireson first argues that his trial counsel should have objected to the following statement from the prosecutor's closing argument: "You can also consider the mannerisms while testifying. . . . And you could tell this was difficult for [A.K.] to do. This was difficult for all of the witnesses. But what you saw up on the stand when [A.K.] was testifying, *that was genuine*." (emphasis added).

Similarly, and second, Kathireson complains that his counsel should have objected when Detective Thomsen testified that, in her experience, different children have a wide variety of responses to the forensic interview process and A.K.'s was consistent with that observation.

Either is unavailing. The prosecutor was asking the jury to consider the victim's demeanor on the witness stand as evidence. It is permissible to argue a witness is credible based on testimony at trial, which can include the witness's demeanor while testifying. State v. Copeland, 130 Wn.2d 244, 291, 922 P.2d 1304 (1996); State v. Knapp, 14 Wn. App. 101, 111, 540 P.2d 898 (1975). Similarly, our Supreme Court has held that a physician's statement that a witness's account was

"clear and consistent" in their professional experience does not constitute an opinion on the witnesses's credibility. State v. Kirkman, 159 Wn.2d 918, 930, 155 P.3d 125 (2007) ("A witness or victim may 'clearly and consistently' provide an account that is false," which is up for the jury to weigh).

Furthermore, the potential for prejudice was mitigated by the court properly instructing the jury on how to assess witness credibility. State v. Elmore, 154 Wn. App. 885, 898-99, 228 P.3d 760 (2010). Jurors are presumed to follow the court's instructions absent evidence to the contrary. State v. Dye, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013).

As a further type of alleged vouching, Kathireson third argues that his trial counsel improperly failed to object when A.K. and the State referred to her "trauma" and when the victim's aunt referenced her own status as a "survivor," and the need to find therapy for A.K.

There is no case law, however, holding that a victim of sexual assault cannot refer to their own experience as "traumatic" or a witness describe themselves as a "survivor." See, e.g., State v. McKenzie, 157 Wn.2d 44, 57, 134 P.3d 221 (2006) (prosecutor did not commit misconduct by referring to defendant as a "rapist" when the term was consistent with the State's evidence). As long as the argument is consistent with the victim's description of the abuse, which is the "trauma" referenced, there is no authority prohibiting a prosecutor, in turn, from

9

characterizing sexual abuse as "traumatic" or thereby veering into inappropriate vouching. See, e.g., State v. Gentry. 125 Wn.2d 570, 644, 888 P.2d 1105 (1995) (prosecutor's "lengthy and graphic description" of the crime was permissible, and "references to the impact on the victim. . . were not improper."). Thus, such testimony was not unduly prejudicial and Kathireson's counsel was not constitutionally ineffective in not objecting to such references.

3. Expert witness instruction

Finally, Kathireson himself alleges that his counsel was ineffective for failing to request an expert witness instruction regarding Detective Thomsen's testimony. An appellant asserting deficient performance based on the failure to request an instruction must show they were entitled to said instruction in the first place. State v. Thompson, 169 Wn. App. 436, 495, 290 P.3d 996 (2012). The State acknowledges that the detective did testify to specialized knowledge exceeding that of a typical layperson and, thus, 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.51, at 217 (5th ed. 2021) (WPIC) could have been given.

Detective Thomsen, however, was not offered by either party as an expert witness and there are insufficient facts in the record as to whether she would have so qualified as to the testimony she provided. In these circumstances, the State

is correct that the instruction is not mandatory and there is not authority demonstrating any "entitlement" to it. WPIC 6.51 (Note On Use).

Further, even if it was error not to ask for the instruction, it could be viewed as a reasonable strategic choice to forego an instruction characterizing Detective Thomsen as an "expert" to the jury, particularly when counsel's strategy was to portray her investigation as "lacking." See State v. Embry, 171 Wn. App. 714, 762, 287 P.3d 648 (2012) (reasonable to forego limiting instruction to avoid reemphasizing damaging evidence). And the absence of any particular instruction is generally not prejudicial if the existing instructions allowed defense counsel to argue their theory of the case, here that Detective Thomsen's "expertise" could be ignored, as he did and as the second paragraph of WPIC 6.51 contemplates. State v. Cienfuegos, 144 Wn.2d 222, 229-30, 25 P.3d 1011 (2001). Kathireson, in short, has not shown prejudice.[1]

---

[1] Because Kathireson has not shown prejudice as to any of these ineffective assistance of counsel claims, he does not show prejudice, let alone "flagrant and ill-intentioned" prejudice with respect to similar claims (such as vouching) brought as prosecutorial misconduct claims. State v. Emery, 174 Wn.2d 741, 760–61, 278 P.3d 653 (2012) (defendant must show the prosecutor's misconduct was "so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice"). Thus, the Court need not address those claims independently.

As Kathireson has failed to show that his counsel's performance was deficient or, even if arguendo it was at certain points, that it was prejudicial, we do not conclude that his counsel rendered ineffective assistance.[2]

B. Prosecutorial Misconduct

Kathireson argues that the prosecutor committed misconduct by presenting improper closing argument; specifically, when making the following statement in closing argument: "Jury Instruction No. 3 . . . tells you that throughout this trial, the defendant is entitled to the presumption of innocence. So *up to the moment that you go to deliberate*, you are to presume the defendant innocent." (emphasis added). The State concedes, and this Court concludes, that the prosecutor made an erroneous comment regarding when the presumption of innocence "dissipates."

We review allegations of prosecutorial misconduct for an abuse of discretion. State v. Lindsay, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). To prevail on a claim of prosecutorial misconduct, the defendant bears the burden of "show[ing] that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). Once a defendant

---

[2] Kathireson further argues that his counsel was ineffective by failing to object to the State's (admitted) improper closing argument regarding the dissipation of the presumption of innocence. The argument is discussed in the following section.

establishes that a prosecutor's statements were improper, if, as here, the defendant did not object at trial, "…the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760-61. Defense counsel's failure to object to the prosecutor's allegedly improper comments " 'strongly suggests' " that the comments " 'did not appear critically prejudicial to [the defendant] in the context of the trial.' " McKenzie, 157 Wn.2d at 53 n.2. (emphasis omitted) (quoting State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990)).

We agree with the State that Kathireson has not shown prejudice resulted or that the misconduct was not curable by the court's instructions to the jury. First, the jury was properly instructed on the presumption of innocence contemporaneously with the closing arguments. Indeed, even before closing arguments, the court had already reminded the jury (during the testimony of a witness who discussed the probable cause standard) that "You [the jury] start off with the presumption of innocence. Do you follow me?" And the record indicates that "All jurors responded affirmatively."

Furthermore, consistent with WPIC 1.02, the trial court instructed the jury that "[t]he law is contained in my instructions to you. You must disregard any remark or statement or argument that is not supported by the evidence or the law

13

in my instructions." The jury is presumed to have read and/or followed these instructions "absent evidence to the contrary." Dye, 178 Wn.2d at 556. Thus, because there is no evidence to the contrary, we presume any error was cured or minimized by these instructions. State v. Anderson, 153 Wn. App. 417, 432, 220 P.3d 1273 (2009) ("The trial court's instructions regarding the presumption of innocence minimized any negative impact on the jury").

Second, the error in this case occurred during the prosecutor's initial closing argument. Although defense counsel did not directly respond to the erroneous statement, he discussed the presumption of innocence at length and accurately, thus additionally mitigating any prejudice arising from the State's single, unrepeated, un-emphasized misstatement. Specifically, defense counsel argued:

> Mr. Kathireson does not have to prove his innocence. One of the fears I have as a defense attorney is that sometimes that burden can be shifted to my client; and that's absolutely not something that's proper to do, and if you ever find yourself *in jury deliberations* thinking that way, please take a moment step back, check yourself, and remember that Mr. Kathireson does not have any burden of proof.

(Emphasis added). [3]

---

[3] Kathireson also argues that his counsel was ineffective by failing to object to this admitted prosecutorial misconduct. However, "Lawyers do not commonly object during closing argument 'absent egregious misstatements.' A decision not to object during summation is within the wide range of permissible professional legal conduct." In re Pers. Restraint of Davis, 152 Wn.2d at 717 (footnote omitted) (quoting United States v. Necoechea, 986 F.2d 1273, 1281 (9th Cir. 1993), and

C. Cumulative Error

Kathireson next argues that cumulative error denied him his state and federal constitutional right to a fair trial. We disagree.

The cumulative error doctrine requires reversal when a defendant carries the burden of showing that multiple accrued errors rendered a trial "fundamentally unfair," even if each transgression was individually harmless. Emery, 174 Wn.2d at 766. As discussed above, and as the State has conceded, we conclude there was one error, which did not result in any prejudice. Kathireson has failed to carry his burden of showing that "multiple" trial errors rendered the trial fundamentally unfair. The cumulative error doctrine does not apply.

D. Sentencing

Kathireson argues that the trial court made two errors at sentencing. First, he claims that the trial court improperly based its decision on the charge from Guam, which was ultimately dismissed. This claim can be disposed of quickly

---

citing Strickland, 466 U.S. at 689). Even assuming, without holding, that counsel's failure to object and request a curative instruction was deficient, Kathireson also has not shown prejudice. Prejudice requires Kathireson to show "a reasonable probability that, but for [his trial] counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Again, the trial court properly instructed the jury on the State's burden of proof and defense counsel accurately stated the standard in closing. See Warren, 165 Wn.2d at 28. And, as discussed below, the State presented significant evidence that he abused A.K. Thus, Kathireson has not shown that his counsel's failure to object and request a curative instruction prejudiced the outcome.

because it is simply factually inaccurate. The trial court expressly stated it did not "know what happened in Guam, and *it doesn't count into [the court's] sentence . . . .*" (emphasis added). There is no violation of the real facts doctrine (RCW 9.94A.530(2)) and his defense counsel was not deficient in not objecting to the mere mention of the charge from Guam, when such actions would have not changed the court's decision. See, e.g., State v. Knight, 176 Wn. App. 936, 957-58, 309 P.3d 776 (2013) (defendant not prejudiced by failure to seek an exceptional sentence because there was no evidence it would have affected the court's decision).

Second, Kathireson claims the trial court abused its discretion in imposing an order that he have "no direct or indirect contact with minors unless [his] community corrections officer gives advance approval" and prohibiting him from holding "any position of authority or trust involving minors."

Parents have a fundamental constitutional right "to the care, custody, and companionship of their children." State v. DeLeon, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020). Courts may limit this right when "reasonably necessary" to protect a child's physical or mental health. Id. Before restricting a defendant's contact with his biological children, a sentencing court must expressly (a) consider the constitutional right to parent, (b) explain why the no-contact provision is

necessary, and (c) explore whether any viable less restrictive alternatives exist. Id.; State v. Martinez-Platero, 17 Wn. App. 2d 716, 725, 487 P.3d 910 (2021).

Here, the court did not make an exception to the absolute prohibition of contact between Kathireson and his other five non-victim biological children, and nothing in the record demonstrates that the court considered his parental rights, explained why such a sweeping provision governing his five other children is necessary, or explored any less restrictive alternatives.  As the State concedes, remand is required for the trial court to resentence him *only as to* the breadth of the no-contact provision and expressly to consider Kathireson's constitutional right to parent his non-victim children, to explore whether any viable less restrictive alternatives exist (such as alternate types of contact), and to explain why the no-contact provision it ultimately applies is necessary.

E.  Statement of Additional Grounds for Review

In addition to his attorney's briefing on appeal, Kathireson submitted a statement of additional grounds for review, which are permitted by RAP 10.10. They serve to ensure that an appellant can raise issues in their criminal appeal that may have been overlooked by their attorney.  Recognizing the practical limitations many incarcerated individuals face when preparing their own legal documents, RAP 10.10(c) does not require that the statement be supported by reference to the record or citation to authorities.  However, it does require that the

appellant adequately "inform the court of the nature and occurrence of alleged errors."  RAP 10.10(c).  It also relieves the court of any independent obligation to search the record in support of the appellant's claims, making it prudent for the appellant to support their argument through reference to facts.  RAP 10.10(c).  To enable that factual support, it provides the means for appellants to obtain copies of the record from counsel.  RAP 10.10(e).

In those sections of his statement of additional grounds for review which have not been addressed above or are not duplicative of his appellate counsel's arguments, Kathireson asserts that the evidence was insufficient as a matter of law and that his trial counsel's request for extension of time to conduct the trial (from six days to some undetermined number of days) was improperly denied.  With regard to the latter issue, Kathireson fails to identify anything in the record demonstrating that any witness or any evidence that Kathireson's counsel sought to offer was not heard in the course of trial.  Thus, Kathireson has not shown prejudice.

As to the former, in determining the sufficiency of the evidence, our standard of review is "whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt."  State v. Rempel, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990).  A challenge to the sufficiency of the evidence admits the

18

truth of the State's evidence. State v. Witherspoon, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Viewing the evidence presented above in the light most favorable to the State -- including A.K.'s testimony and her reporting of the abuse to three different parties in the emotional and consistent manner in which she did -- Kathireson has failed to meet his burden of showing that no rational jury could have found the elements of the crimes beyond a reasonable doubt, or that the evidence otherwise was insufficient as a matter of law.

### III.    CONCLUSION

We affirm the convictions and remand only for the trial court to expressly consider the no-contact order between Kathireson and his non-victim children as delineated above.

Díaz, J.

WE CONCUR: