# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>   v.<br><br>JAMES LOUIS LYON<br><br>                Appellant. | No.  56675-3-II<br><br><br><br>UNPUBLISHED OPINION |

LEE, J. — James L. Lyon appeals his conviction and sentence for one count of first degree child molestation.  Lyon argues that (1) he received ineffective assistance of counsel, (2) the trial court erred by sustaining two of the State's hearsay objections, and (3) the trial court erred in imposing several community custody conditions.  The State concedes the issues raised relating to the imposed community custody conditions.  We affirm Lyon's conviction, accept the State's concessions, and remand with instructions to strike or reassess the challenged community custody conditions.

## FACTS

Between March 1 and September 30, 2019, Lyon inappropriately touched his niece, S.H.[1]  S.H. later disclosed the touching to her parents.  After the touching was reported to law enforcement, Roni Jensen conducted a forensic interview with S.H.

---

[1]  We use initials to protect the victim's identity and privacy interests.  *See* Gen. Order 2023-2 of Division II, *In re Using Victim Initials* (Wash. Ct. App.), available at: https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2023-2&div=II.

On December 3, 2021, the State charged Lyon with one count of first degree child molestation. The case proceeded to a jury trial.

A.    TRIAL TESTIMONY

The State called as witnesses S.H., S.H.'s parents, and Jensen. Lyon and his wife, Markie Lyon, testified in Lyon's defense.[2]

1.    Testimony Regarding Alleged Touching

S.H. testified that she was in court "[t]o talk" about "[s]omething that someone did to [her]." 1 Verbatim Rep. of Proc. (VRP) (Dec. 16, 2021) at 467. S.H. indicated that "someone" was Lyon, but did not "feel comfortable" saying what he did. 1 VRP (Dec. 16, 2021) at 467. Later, during Jensen's direct examination, the State entered into evidence a recording of S.H.'s forensic interview, and the recording was published to the jury. In that interview, S.H. explained that Lyon touched her "lady parts." Ex. 6, VIDEO_TS, VTS_01_1.VOB at 12:49-51. S.H. explained that the touching occurred more than once, but that the most recent occurrence happened the last time she spent the night at Lyon's house, when she was six. During cross examination, S.H. testified she thought the last time she went to Lyon's house was in 2019, when she was five, six, or seven. S.H. was born in October 2012, meaning the touching occurred sometime in 2019.

S.H.'s father testified that the last time S.H. spent the night at Lyon's home was mid-summer 2019. S.H.'s mother also testified that the last time S.H. spent the night at Lyon's home was in July, 2019.

---

[2] We will refer to James Lyon by his last name and to Markie Lyon by her first name to avoid confusion. We mean no disrespect.

During direct examination, Lyon admitted he touched S.H., but stated he only did so for "hygienic purposes," and not for his own "sexual gratification." 2 VRP (Dec. 21, 2021) at 618. Lyon stated the touching occurred "the last time [he] babysat [S.H.] at night." 2 VRP (Dec. 21, 2021) at 616. Lyon first testified that the last time he babysat S.H. overnight was "[p]rior to August, 2018." 2 VRP (Dec. 21, 2021) at 606. However, he later testified that the incident at issue occurred in 2017, the last time he babysat her at night.

On cross examination, when Lyon was asked whether, during an April 28, 2020, interview with law enforcement, he told the interviewer that the touching occurred a year prior to the interview, Lyon confirmed that is what he told the detective. However, Lyon then testified that S.H. was five years old when he put rash medicine on her, putting the date around 2017-18.

Markie testified that the last time S.H. spent the night at her and Lyon's home was when she was five years old, putting the date around 2017-18.

2. Testimony Regarding S.H.'s Alleged Sexualized Behavior

During opening statement, defense counsel stated that the jury would hear from several witnesses "that [S.H.] exhibited sexualized behavior" prior to the incident with Lyon. 1 VRP (Dec. 16, 2021) at 463.

On direct examination, Lyon testified that he had seen S.H. exhibit sexualized behavior, such as "[t]rying to kiss [Lyon's] son" and "going under the blankets with him." 2 VRP (Dec. 21, 2021) at 608-09. When asked about a time S.H. allegedly exposed herself to her cousin, Lyon explained he "didn't witness it first-hand" but "heard about it" later. 2 VRP (Dec. 21, 2021) at 609. Lyon was also asked whether S.H.'s parents disciplined her afterwards. Lyon started to respond that S.H.'s father told S.H., "[Y]ou want to act like a dirty girl then—" before the State

objected to hearsay. 2 VRP (Dec. 21, 2021) at 609-10. The trial court sustained the objection and struck Lyon's testimony about what S.H.'s father said from the record.

Markie also testified that S.H. often displayed sexualized behavior. She testified that once she overheard S.H. joking about having seen Lyon's genitals. Markie also described the alleged exposure incident and said that after S.H. exposed herself, S.H.'s father "grabbed [S.H.] and . . . made her strip down, completely naked." 2 VRP (Dec. 21, 2021) at 643. Markie then testified that S.H.'s father told S.H. "you want to act like a nasty little girl, you're going to be a nasty little girl." 2 VRP (Dec. 21, 2021) at 643-44. The State objected to hearsay and moved to strike Markie's testimony about what S.H.'s father said. Defense counsel responded that the testimony was "not offered for its truth," and the trial court held a sidebar conference off the record, which was later placed on the record outside the presence of the jury. 2 VRP (Dec. 21, 2021) at 644. The trial court sustained the State's objection and instructed the jury to disregard Markie's last comment regarding what S.H.'s father said.

S.H.'s parents were both asked about S.H.'s alleged displays of sexualized behavior. S.H.'s father testified that he never saw "any outward sexual displays by [S.H.]." 2 VRP (Dec. 17, 2021) at 513. He remembered S.H. saying some "inappropriate words," but nothing specific. 2 VRP (Dec. 17, 2021) at 511. He also testified that he "heard about" an incident where S.H. and her cousin "were apparently doing some inappropriate stuff," but nothing specific. 2 VRP (Dec. 17, 2021) at 511. He could not "recall if there was any punishment" for that incident, but if there was, "[i]t was most likely a discussion about what was appropriate and what was not." 2 VRP (Dec. 17, 2021) at 515.

S.H.'s mother testified that S.H. exhibited "very, very little sexual behavior." 2 VRP (Dec. 17, 2021) at 524. She recalled "one incident" where S.H. and her cousin "pulled down their pants, but they were just like—they weren't touching each other or anything like that." 2 VRP (Dec. 17, 2021) at 524. She explained that the children were told "not to do that anymore." 2 VRP (Dec. 17, 2021) at 536. Finally, S.H.'s mother could not recall S.H. ever joking about having seen Lyon's genitals.

B.      JURY INSTRUCTIONS, VERDICT, AND SENTENCING

After the close of trial testimony, the trial court considered jury instructions. Defense counsel proposed a lesser included instruction on fourth degree assault with sexual motivation. The trial court denied the requested instruction.

The jury found Lyon guilty of first degree child molestation.

The trial court imposed a standard range sentence of sixty months. The trial court also imposed several community custody conditions that are challenged on appeal. Finally, the trial court imposed only the mandatory legal financial obligations because of Lyon's limited ability to pay.

Lyon appeals.

## ANALYSIS

A.      INEFFECTIVE ASSISTANCE OF COUNSEL

Lyon argues he received ineffective assistance of counsel when defense counsel failed to request a lesser included instruction on simple fourth degree assault. We disagree.

5

1. Legal Principles

"The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel." *State v. Drath*, 7 Wn. App. 2d 255, 266, 431 P.3d 1098 (2018) (published in part). "An ineffective assistance of counsel claim is a mixed question of law and fact that we review de novo." *Id*.

For an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Id.* Both prongs of the inquiry must be satisfied. *Id*.

Counsel's performance is deficient when it "falls 'below an objective standard of reasonableness based on consideration of all the circumstances.'" *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). Counsel's performance is presumed to be reasonable, and the defendant bears the burden of overcoming this presumption. *Grier*, 171 Wn.2d at 33.

"Where the claim of ineffective assistance is based on counsel's failure to request a particular jury instruction, the defendant must show he was entitled to the instruction." *State v. Classen*, 4 Wn. App. 2d 520, 539-40, 422 P.3d 489 (2018). Thus, for the ineffective assistance of counsel claim, Lyon must show that he was entitled to an instruction for simple fourth degree assault as a lesser included offense for first degree child molestation and that his counsel's failure to request the lesser included offense instruction prejudiced him.

2. Entitlement to Instruction on Fourth Degree Assault

Lyon argues that simple fourth degree assault is a lesser included offense of first degree child molestation. Given the facts of this case, we disagree.

RCW 10.61.006 gives criminal defendants "a statutory right to have lesser included offenses presented to the jury." *State v. Stevens*, 158 Wn.2d 304, 310, 143 P.3d 817 (2006). The statute makes clear that the lesser included offense must be "necessarily included within that [offense] with which [the defendant] is charged in the indictment or information." RCW 10.61.006.

We apply a two-prong inquiry to determine whether an offense is a lesser included offense: "[f]irst, each of the elements of the lesser offense must be a necessary element of the offense charged"; and second, the evidence presented "must support an inference that the lesser crime was committed." *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The first prong is referred to as the "legal prong" and the second as the "factual prong." *Stevens*, 158 Wn.2d at 310.

      a.     Legal prong

"In order for one crime to be a[] [lesser] included offense under the legal prong, every element of the lesser offense must be an element of the greater crime." *State v. Ritchey*, 1 Wn. App. 2d 387, 390, 405 P.3d 1018 (2017), *review denied*, 190 Wn.2d 1018 (2018). In *Stevens*, our supreme court held that the crime of second degree child molestation necessarily includes the elements of fourth degree assault; thus, the satisfying *Workman's* legal prong. *Stevens*, 158 Wn.2d at 311.

Here, although Lyon was charged with first degree, rather than second degree, child molestation, Lyon argues that "because the only distinction between" the two crimes "is the age of the parties," *Stevens* should satisfy the legal prong of the inquiry. Br. of Appellant at 20, n.1. Lyon is correct that, based on *Stevens*, the legal prong is satisfied.

"A person is guilty of child molestation in the first degree when the person has . . . sexual contact with another who is less than twelve years old and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083(1). The difference between first degree child molestation and second degree child molestation is the age of the victim: "A person is guilty of child molestation in the second degree when the person has . . . sexual contact with another who is" between twelve and fourteen years old. RCW 9A.44.086(1). Therefore, *Stevens* appears to support the conclusion that fourth degree assault is a lesser included offense of first degree child molestation under *Workman*'s legal prong.[3]

Given our supreme court's decision in *Stevens*, we hold that *Workman's* legal prong is met pursuant to *Stevens*. Unless and until our supreme court overturns *Stevens*, *Stevens* remains "binding on all lower courts." *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

However, even if fourth degree assault meets the legal prong of *Workman*, Lyon's ineffective assistance of counsel claim fails because *Workman's* factual prong cannot be met under the facts of this case.

---

[3] We note that the holding in *Stevens* that fourth degree assault is a lesser included offense of child molestation is currently on review before our supreme court in *State v. Bertrand*, No. 100953-4. In *Bertrand*, the defendant was convicted of two counts of first degree child molestation, which is the same crime Lyon is convicted of. On direct review accepted by our supreme court, Bertrand, like Lyon, argues he received ineffective assistance of counsel when defense counsel failed to request the lesser included offense instruction of fourth degree assault. And, like Lyon, Bertrand cites *Stevens* for the proposition that "[a]ssault in the fourth degree is a lesser included offense of child molestation." Br. of Appellant at 30, *Bertrand*, No. 100953-4 (Wash. Jan. 23, 2023). In response, the State argues that "*Stevens* is incorrect and harmful" and asks our supreme court to overrule it. Br. of Resp't at 7, *Bertrand*, No. 100953-4 (Wash. Apr. 27, 2023).

b.       Factual prong

*Workman*'s "factual prong . . . is satisfied only if based on some evidence admitted, the jury could reject the greater charge and return a guilty verdict on the lesser." *State v. Coryell*, 197 Wn.2d 397, 407, 483 P.3d 98 (2021). "'It is not enough that the jury might simply disbelieve the State's evidence. Instead, some evidence must be presented which affirmatively establishes the defendant's theory on the lesser included offense before an instruction will be given.'" *Id.* (quoting *State v. Fowler*, 114 Wn.2d 59, 67, 785 P.2d 808 (1990)). "When the appellate court determines if the evidence at trial is sufficient to support an instruction, it views the 'supporting evidence in the light most favorable to the party that requested the instruction.'" *Id.* at 415 (quoting *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000)).

Thus, to satisfy the factual prong, Lyon must point to evidence on the record that shows he committed fourth degree assault, rather than first degree child molestation, in the summer of 2019. Lyon fails to do so. Although the record shows that Lyon and Markie testified that Lyon touched S.H. in 2017-2018, the record is devoid of any evidence from which the jury could find that Lyon committed fourth degree assault during the summer of 2019. Thus, Lyon fails to satisfy *Workman*'s factual prong.

Accordingly, Lyon was not entitled to a lesser included offense instruction on fourth degree assault. Because Lyon was not entitled to such an instruction, his counsel's failure to request the instruction could not have constituted deficient performance. And, because Lyon fails to establish deficient performance, he necessarily fails to establish he received ineffective assistance of

counsel. Thus, Lyon did not receive ineffective assistance of counsel when defense counsel failed to request a lesser included offense jury instruction on fourth degree assault.[4]

### 3. Prejudice

Even if Lyon could show he was entitled to a lesser included offense instruction of fourth degree assault and that defense counsel was deficient for failing to request it, he cannot show that he was prejudiced.

To show prejudice, "the defendant must establish that 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *Kyllo*, 166 Wn.2d at 862)). "Although this standard is lower than a preponderance standard, the defendant must affirmatively 'show more than a conceivable effect on the outcome.'" *Drath*, 7 Wn. App. 2d at 267 (internal quotations omitted) (quoting *Estes*, 188 Wn.2d at 458).

Our supreme court has explained that when a jury convicts a defendant of a crime, reviewing courts "[a]ssum[e] . . . that the jury would not have convicted [the defendant] . . . unless the State had met its burden of proof." *Grier*, 171 Wn.2d at 43-44. Thus, where a defendant alleges ineffective assistance based on counsel's failure to request a lesser included offense instruction, but was convicted on the greater offense, defendant cannot demonstrate prejudice

---

[4] Lyon argues that the trial court erred because its "statements also somewhat suggest that it would not have entertained any fourth degree assault instruction at all." Br. of Appellant at 25. Lyon is mistaken. The trial court's ruling had to do with a fourth degree assault with sexual motivation instruction, not simple fourth degree assault. However, even if the trial court had ruled on a simple fourth degree assault instruction, Lyon would still be unable to show he was entitled to the fourth degree assault instruction under *Workman*'s factual prong.

because "the availability of a compromise verdict would not have changed the outcome of [the defendant's] trial." *Id.* at 44.

Here, the parties dispute the applicable standard in determining prejudice. The State relies on the standard set forth in *Grier*. Lyon argues that "the denial of a lesser included offense instruction that is supported by the evidence . . . cannot be harmless," citing *State v. Condon*, 182 Wn.2d 307, 326, 343 P.3d 357 (2015) and *State v. Parker*, 102 Wn.2d 161, 166, 683 P.2d 189 (1984) in support. Br. of Appellant at 24-25. However, neither *Condon* nor *Parker* are applicable.

In both *Condon* and *Parker*, the defendants appealed the trial court's denial of a requested jury instruction. *Condon*, 182 Wn.2d at 313, 315-16; *Parker*, 102 Wn.2d at 163. Here, however, Lyon is not challenging a trial court's denial of a requested lesser included offense instruction. Rather, like the defendant in *Grier*, Lyon is arguing that his counsel was ineffective for failing to request a lesser included offense instruction. 171 Wn.2d at 26-29. Because Lyon argues ineffective assistance of counsel, rather than challenging any trial court decision, *Condon* and *Parker* are inapposite and *Grier*'s prejudice standard controls.[5]

Ultimately, even if Lyon was entitled to a lesser included offense instruction on fourth degree assault, he cannot show prejudice because he was convicted of the greater offense of first

---

[5] We note that *Grier*'s prejudice standard is also being reviewed by our supreme court in *Bertrand*, No. 100953-4. Specifically, the appellant in *Bertrand* argues that "[t]rial counsel's failure to request an instruction on a lesser included offense can be deficient performance that prejudices the accused, even if the jury convicted on the greater [offense]," citing *Crace v. Herzog*, 798 F.3d 840, 847 (9th Cir. 2015), in support. Br. of Appellant at 8, *Bertrand*, No. 100953-4 (Wash. Jan. 23, 2023). Bertrand specifically questions *Grier*, arguing that the trial court should have followed *Crace*'s explicit critique of *Grier*'s prejudice standard and found Bertrand was prejudiced by defense counsel's failure to request a lesser included instruction to which Bertrand was entitled. However, unless and until our supreme court overturns *Grier*, *Grier* remains "binding on all lower courts." *Gore*, 101 Wn.2d at 487.

degree child molestation. Thus, "the availability of [a fourth degree assault] verdict would not have changed the outcome of [Lyon's] trial." *Grier*, 171 Wn.2d at 44.

Because Lyon cannot show his counsel's performance was deficient or that counsel's performance prejudiced him, Lyon did not receive ineffective assistance of counsel.

B.   TRIAL COURT'S RULING ON STATE'S OBJECTIONS TO HEARSAY DURING LYON AND MARKIE'S TESTIMONY

Lyon argues that the trial court violated his constitutional right to present a defense when it sustained two of the State's hearsay objections during defense's case-in-chief. We disagree.

"A criminal defendant has a constitutional right to present a defense under the Sixth Amendment to the United States Constitution and article I, section 22 (amendment 10) of the Washington Constitution." *State v. Wade*, 186 Wn. App. 749, 763, 346 P.3d 838, *review denied*, 184 Wn.2d 1004 (2015). Whether a defendant's right to present a defense "has been abridged presents a legal question that is reviewed de novo." *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019), *cert. denied*, 142 S. Ct. 726 (2021).

When an appellant alleges that an evidentiary ruling deprived him of his right to present a defense, this court applies a two-step standard of review. *Id.* In the first step, the court "review[s] the trial court's individual evidentiary rulings for an abuse of discretion." *Id.* In the second step, the court "consider[s] de novo the constitutional question of whether these rulings deprived [appellant] of [his] Sixth Amendment right to present a defense." *Id.* at 797-98.

1.      No Abuse of Discretion in Evidentiary Ruling

"'A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Id.* at 799 (quoting *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007)).

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay evidence "is not admissible" unless it falls under one of the various exceptions to the hearsay rule. ER 802. When a proffered hearsay statement relays a second hearsay statement, the evidence is admissible only "if each part of the combined statements conforms with an exception to the hearsay rule." ER 805. "Where a statement is not offered for the truth of the contents of the [statement], but only to show that it was made, the statement is not hearsay." *State v. Gonzalez-Hernandez*, 122 Wn. App. 53, 57, 92 P.3d 789 (2004).

Here, Lyon challenges two instances where the trial court sustained the State's objection to hearsay: once during his own testimony, and another during Markie's. In neither instance did the trial court abuse its discretion by sustaining the hearsay objection.

First, the trial court sustained a hearsay objection when Lyon sought to testify as to what S.H.'s father said to S.H. after she allegedly exposed herself to her cousin. Because Lyon was attempting to testify to what another person said, Lyon's testimony was hearsay.[6] Therefore, the trial court did not err in excluding this testimony as hearsay.

---

[6] We note that Lyon did not himself hear what S.H.'s father said nor could Lyon explain how he learned of what S.H.'s father said to S.H. Thus, the challenged testimony was hearsay within hearsay. Lyon does not address the fact that his testimony was hearsay within hearsay.

Lyon argues that his testimony was not offered for its truth, but "to establish that S.H.'s parents . . . disciplined her harshly for engaging in inappropriate behavior," and that regardless, the statement was "not assertive speech and therefore . . . not hearsay." Br. of Appellant at 32. Lyon's argument fails because there was no reason for Lyon to repeat the words spoken by S.H.'s father other than to establish that S.H. was in fact a "nasty girl," one of Lyon's defenses.[7]

Second, the trial court sustained a hearsay objection when Markie testified that S.H.'s father told S.H. "you want to act like a nasty little girl, you're going to be a nasty little girl." 2 VRP (Dec. 21, 2021) at 643-44 . The trial court did not abuse its discretion in sustaining the hearsay objection for the same reasons it did not abuse its discretion in sustaining the hearsay objection to Lyon's testimony—Markie's attempt to testify as to what S.H.'s father said to S.H. is

---

[7] Even if the evidence was to show that S.H.'s parents disciplined S.H. harshly for inappropriate behavior, the evidence was irrelevant and properly excluded.

Evidence that "is not relevant is not admissible." ER 402. Evidence is relevant and admissible only when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Lyon was charged with first degree child molestation for conduct towards S.H. How S.H.'s parents disciplined S.H. for inappropriate behavior would not tend to make the existence of any fact of consequence in determining whether Lyon committed first degree molestation against S.H. more or less probable. Thus, the evidence of what S.H.'s father said to S.H. to show how harshly S.H. was disciplined was irrelevant and inadmissible.

Moreover, Lyon's argument that testimony about statements made by S.H.'s father is not assertive speech also fails. Lyon attempts to characterize what S.H.'s father said to S.H. as akin to "greetings, pleasantries, expressions of joy, annoyance or other emotions." Br. of Appellant at 32. Even if the testimony of what S.H.'s father said about S.H. were so characterized and was offered merely to show that S.H.'s father was disciplining S.H., such testimony is irrelevant and inadmissible. Evidence that S.H.'s father disciplined S.H. for inappropriate behavior would not tend to make the existence of any fact of consequence in determining whether Lyon committed first degree molestation against S.H. more or less probable.

hearsay. Thus, the trial court did not abuse its discretion by excluding Markie's testimony as to what S.H.'s father said to S.H.

The trial court's rulings sustaining the State's hearsay objections to testimony about statements made by S.H.'s father to S.H. rested on tenable grounds. Thus, the trial court did not abuse its discretion in sustaining the State's hearsay objections to testimony from Lyon and Markie about what S.H.'s father said to S.H.

2.      No Violation of the Right to Present a Defense

Under the second step of the *Arndt* standard, we "consider de novo the constitutional question of whether these rulings deprived [appellant] of [his] Sixth Amendment right to present a defense." *Arndt*, 194 Wn.2d at 797-98; *see also State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022).

The right to present a defense is not limitless. *State v. Orn*, 197 Wn.2d 343, 352, 482 P.3d 913 (2021). Judges can "'exclude evidence that is repetitive . . ., only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues.'" *Jennings*, 199 Wn.2d at 63 (alterations in original) (internal quotation marks omitted) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 326-27, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006)). Thus, under *Ardnt*'s second prong, the reviewing court first asks whether the excluded evidence is "at least minimally relevant." *Orn*, 197 Wn.2d at 353; *see also Jennings*, 199 Wn.2d at 63. "If the evidence is relevant, the reviewing court must weigh the defendant's right to produce relevant evidence against the State's interest in limiting the prejudicial effects of that evidence to determine if excluding the evidence violates the defendant's constitutional rights." *Jennings*, 199 Wn.2d at 63. There is "a distinction between

evidence that merely bolsters credibility and evidence that is necessary to present a defense," with only the latter satisfying the *Arndt* standard. *Id.* at 66-67.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence." ER 403. "'Evidence likely to provoke an emotional response rather than a rational decision is unfairly prejudicial.'" *State v. Nguyen*, 10 Wn. App. 2d 797, 820, 450 P.3d 630 (2019) (quoting *State v. Johnson*, 90 Wn. App. 54, 62, 950 P.2d 981 (1998)), *review denied*, 195 Wn.2d 1012 (2020). "The availability of other means of proof is a factor in deciding whether to exclude prejudicial evidence." *Johnson*, 90 Wn. App. at 62.

Here, Lyon argues that statements made by S.H.'s father to S.H. were "extremely relevant to the defense theory" that S.H.'s accusations against Lyon were "a manifestation" of S.H.'s sexually inappropriate behavior. Br. of Appellant at 33. But Lyon fails to show how S.H.'s sexually inappropriate behavior is relevant to the determination of whether he committed first degree child molestation against S.H. Further, even if the evidence were marginally relevant to determining whether Lyon committed first degree molestation against S.H., testimony about what S.H.'s father said to S.H. after an incident involving her cousin does not tend to make the existence of any fact that is of consequence to the determination of whether S.H.'s accusations against Lyon were a manifestation of S.H.'s sexually inappropriate behavior more probable or less probable than it would be without the evidence. ER 401.

Lyon's also argues that the excluded statements were necessary to counter S.H.'s parents' minimization of S.H.'s misbehavior. However, Lyon fails to show how S.H.'s parents' minimization of S.H.'s behavior is relevant to the determination of whether he committed first degree child molestation against S.H.

Moreover, while the trial court precluded testimony about statements S.H.'s father made to S.H., the trial court allowed evidence of S.H.'s behavior that led to those statements, and other instances of S.H.'s allegedly sexualized behavior. For example, Lyon testified that he observed S.H. try to kiss his son and "go[] under the blankets with him." 2 VRP (Dec. 21, 2021) at 609. Lyon also recounted the exposure incident involving S.H. Furthermore, Markie testified that S.H. often displayed sexualized behavior and recounted both the exposure incident and another incident where Markie allegedly overheard S.H. joking about having seen Lyon's genitals.

Because the excluded testimony was irrelevant and Lyon was allowed to present evidence of S.H.'s inappropriate behavior, the trial court did not violate Lyon's right to present a defense.

C.      COMMUNITY CUSTODY CONDITIONS

Lyon challenges five of the community custody conditions the trial court imposed. The State concedes those conditions "must be modified or stricken." Br. of Resp't at 34. We accept the State's concession and remand the case to the trial court with instructions to strike or modify the conditions, as outlined below.

Under the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, when the trial court imposes a term of community custody, it must "impose [certain] conditions of community custody" as part of an offender's judgment and sentence. RCW 9.94A.703. The SRA also empowers trial courts to impose discretionary conditions, including conditions "reasonably related

17

to the circumstances of the offense . . . or the safety of the community" and other "crime-related prohibitions." RCW 9.94A.703(3)(d), (f). A "crime-related prohibition" is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). A reviewing court will uphold such conditions if they are "'reasonably crime related.'" *State v. Nguyen*, 191 Wn.2d 671, 683-84, 425 P.3d 847 (2018) (internal citations omitted) (quoting *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009)).

Community custody conditions are reviewed for an abuse of discretion and will be reversed only if they are manifestly unreasonable. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). However, when crime-related prohibitions interfere with a fundamental constitutional right, a more careful review is required. *Warren*, 165 Wn.2d at 32. Where a community custody condition interferes with a constitutional right, the condition must be narrowly tailored to serve a legitimate state interest. *Padilla*, 190 Wn.2d at 683 (First Amendment speech). When a trial court imposes a condition beyond its statutory authority, the condition must be stricken. *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008).

1.      Internet Ban (Community Custody Condition 11)

Lyon argues that community custody condition 11 of his judgment and sentence, which prohibits the use of or access to the internet unless authorized in advance by the community corrections officer (CCO) and sex offender treatment provider (SOTP), must be stricken because it is not crime related. The State concedes condition 11 is not crime related. We accept the State's concession and remand to the trial court with instructions to strike community custody condition 11.

18

Discretionary community custody conditions will be upheld if they are reasonably crime related. *Nguyen*, 191 Wn.2d at 683. Where there is "no evidence in the record that . . . [defendant] accessed the Internet before the [crime] or that Internet use contributed in any way to the crime," a condition prohibiting defendant from accessing the internet is not reasonably crime related and should be stricken. *O'Cain*, 144 Wn. App. at 775.

Here, there is no evidence in the record that Lyon used the internet before molesting S.H. or that internet usage contributed to Lyon's crime. Therefore, community custody condition 11 is not crime related, and we remand to the trial court with instructions to strike the condition from Lyon's judgment and sentence.[8]

2.      Contact with Minors (Community Custody Condition 12)

Lyon argues that the trial court must reassess community custody condition 12, which prohibits Lyon from having contact with any child under the age of 18 unless a responsible adult who is capable of protecting the child and is aware of the conviction is present and the contact has been approved in advance by the CCO and SOTP. Lyon asserts that the trial court erred by imposing community condition 12 without analyzing how the condition might impact Lyon's fundamental right to parent his children. At trial, Lyon testified that he has three children.

The State concedes that community custody condition 12 should be remanded because the trial court did not analyze the issue Lyon identifies as required. We accept the State's concession.

---

[8] Lyon also argues that community custody condition 11 is an unconstitutional restriction of Lyon's due process and First Amendment rights. However, because the issue can be decided on nonconstitutional grounds, we need not decide the constitutional issue. *State v. Velasquez*, 176 Wn.2d 333, 340, 292 P.3d 92 (2013).

"A parent has a fundamental constitutional right to the care, custody, and companionship of their children." *State v. DeLeon*, 11 Wn. App. 2d 837, 841, 456 P.3d 405 (2020). The State may burden this right only if doing so is "reasonably necessary to prevent harm to a child." *Id*. "Such conditions 'must be narrowly drawn' and '[t]here must be no reasonable alternative way to achieve the State's interest.'" *Id.* (alteration in original) (internal quotations marks omitted) (quoting *Warren*, 165 Wn.2d at 34-35).

The trial court must "address [the defendant's] constitutional right to parent," "set forth on the record an explanation as to whether the no-contact condition . . . [is] reasonably necessary to . . . protect[] [the defendant's children] from harm," and "analyze on the record whether less restrictive alternatives exist[]." *Id.* at 841-42; *State v. Martinez Platero*, 17 Wn. App. 2d 716, 725, 487 P.3d 910 (remanding to trial court for failure to "analyze whether [the defendant] should be prohibited from contacting his . . . daughter before" prohibiting him from having any contact with minors absent supervision), *review denied*, 198 Wn.2d 1019 (2021).

Here, the trial court did not consider, on the record, Lyon's fundamental right to parent his children, explain why community custody condition 12 is reasonably necessary to achieve a compelling state interest, or whether less restrictive means of achieving the State's interest existed. Thus, we remand to the trial court with instructions to conduct the proper analysis on the record before imposing such a condition.

3.    Pornography Ban (Community Custody Condition 16)

Lyon argues that community custody condition 16, which prohibits Lyon from viewing or listening to pornographic materials as determined or defined by the CCO and the SOTP, must be

stricken because it is unconstitutionally vague. The State concedes that community custody condition 16 is unconstitutionally vague. We accept the State's concession.

"A legal prohibition, such as a community custody condition, is unconstitutionally vague if (1) it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition or (2) it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement." *Padilla*, 190 Wn.2d at 677. Washington courts have remanded community custody conditions prohibiting access to pornography for failure to sufficiently define which materials fell within the prohibition. *Padilla*, 190 Wn.2d at 676, 685 (remanding "condition prohibiting [defendant's] possession and access to pornographic materials, as directed by his CCO" with instructions "to adopt a clear definition . . . of 'pornographic materials'"); *State v. Bahl*, 164 Wn.2d 739, 743, 761-62, 193 P.3d 678 (2008) (remanding unconstitutionally vague condition prohibiting defendant from "'possess[ing] or access[ing] pornographic materials, as directed by the supervising [CCO]'" "for resentencing"). Furthermore, where a condition gives a defendant's CCO the discretion to dictate which materials are prohibited, the discretion "only makes the vagueness problem more apparent, since it virtually acknowledges that on its face it does not provide ascertainable standards for enforcement." *Bahl*, 164 Wn.2d at 758.

Here, community custody condition 16 is similar to the community custody condition challenged in *Padilla*. *Padilla*, 190 Wn.2d at 676 (defining "pornographic material" as "'images of sexual intercourse, simulated or real, masturbation, or the display of intimate body parts'"). And like the community custody conditions at issue in *Padilla* and *Bahl*, community custody condition 16 gives Lyon's CCO and SOTP the discretion to "determine[]/define[]" the bounds of the prohibition. Clerk's Papers (CP) at 75. Because condition 16 "does not sufficiently define the

21

proscribed [materials]" and does not adequately protect against arbitrary enforcement, the condition is unconstitutionally vague and, like the court did in *Padilla* and *Bahl*, we remand to the trial court with instructions to better define the bounds of the prohibition, and to strike the portion of the condition granting Lyon's CCO and SOTP the discretion to define the proscribed materials.

4.      Plethysmograph and Polygraph Testing (Community Custody Condition 17)

Lyon argues that community custody condition 17, which requires Lyon to "undergo and successfully pass, at his . . . expense, periodic polygraph and/or plethysmograph testing to measure treatment progress and compliance at a frequency determined by his . . . Sexual Offender Treatment Provider (SOTP), CCO, or DOC Policy," must be stricken because it prescribes plethysmograph testing as a routine monitoring tool within his CCO's discretion. CP at 75. Lyon also argues that the portion of community custody condition 17 requiring him to bear the cost of plethysmograph and polygraph testing should also be stricken. The State concedes that plethysmograph should only be used "for purposes of sexual treatment," and that Lyon should not bear the cost of polygraph testing. Br. of Resp't at 43. We accept the State's concession.

Plethysmograph testing is meant to measure how well a sex offender is responding to treatment, not as a means of monitoring by a community corrections officer. *State v. Johnson*, 184 Wn. App. 777, 780, 340 P.3d 230 (2014). Thus, a "trial court has authority to order a defendant to submit to plethysmograph testing only if the court also orders a crime-related treatment regimen for sexual deviancy." *Johnson*, 184 Wn. App. at 780; *State v. Land*, 172 Wn. App. 593, 605, 295 P.3d 782 (2013) ("[Plethysmograph] testing can properly be ordered incident to crime-related treatment by a qualified provider. But it may not be viewed as a routine monitoring tool subject

22

only to the discretion of a community corrections officer." (citations omitted)), *review denied*, 177 Wn.2d 1016 (2013).

Here, community custody condition 17 requires Lyon to submit to plethysmograph and polygraph testing at the discretion of his SOTP, CCO or DOC policy. Because the CCO and DOC would not be engaged in treatment with Lyon, the only purpose for which the CCO and DOC would require plethysmograph and polygraph testing would be to monitor community custody compliance. Thus, community condition 17 grants Lyon's CCO the discretion to require plethysmograph and polygraph testing as a monitoring tool. Therefore, we remand community custody condition 17 to the trial court with instructions to strike the CCO and DOC policy language from community custody condition 17.[9]

The trial court's imposition of crime-related treatment or counseling is discretionary. RCW 9.94A.703(3)(c), (f). Thus, it is reasonable to conclude that any authority to impose the cost of crime-related treatment or counseling is discretionary.

Before a trial court may impose a discretionary cost, it must conduct an individualized inquiry into the defendant's current and future ability to pay the discretionary cost. *State v. Ramirez*, 191 Wn.2d 732, 738-40, 426 P.3d 714 (2018). Here, while the record does not show that the trial court conducted any individualized inquiry into Lyon's current and future ability to pay, the trial court did find that "Lyon has only a limited ability to meet his legal financial obligations" and imposed "only . . . the mandatory . . . legal financial obligations." 2 VRP (Jan. 25, 2022) at

---

[9] In his brief, "Lyon does not dispute the [plethysmograph testing] condition insofar as it authorizes plethysmograph testing 'incident to crime-related treatment by a qualified provider.'" Br. of Appellant at 60, n.3 (quoting *Land*, 172 Wn. App. at 605).

736. In light of the record, the trial court abused its discretion by requiring Lyon to pay for testing required under community custody condition 17, and we remand for the trial court to strike the requirement that Lyon pay for any testing in community custody condition 17.

5.      Community Custody Supervision Fees (Community Custody Condition 5)

Lyon also challenges the condition that requires him to pay community custody supervision fees. The State concedes that the language requiring Lyon to pay community supervision fees should be stricken from his judgment and sentence. We accept the State's concession.

Community custody supervision fees are no longer authorized by the legislature. LAWS OF 2022, ch. 29 § 8; RCW 9.94A.703(2). The law eliminating community custody supervisions fees applies prospectively to cases pending on direct appeal when the law took effect. *See Ramirez*, 191 Wn.2d at 747.

Here, the trial court imposed on Lyon community supervision fees under community custody condition 5. And while Lyon was sentenced before the legislature eliminated community custody supervision fees, Lyon's appeal was pending when the legislature amended RCW 9.94A.703. Thus, pursuant to the current version of RCW 9.94A.703 and *Ramirez*, we remand community custody condition 5 with instructions to strike it from Lyon's judgment and sentence.[10]

---

[10]  We note that the trial court also imposed a $500 victim assessment fee. However, effective July 1, 2023, the crime victim penalty assessment is no longer authorized for indigent defendants. LAWS OF 2023, ch. 449 § 1; RCW 7.68.035(4). On remand, in addition to striking the community custody supervision fees, the trial court should ensure it strikes from Lyon's judgment and sentence any LFOs inconsistent with the law.

No. 56675-3-II

CONCLUSION

Because there is no merit to either of Lyon's claim of ineffective assistance of counsel or to Lyon's claim that the trial court erred in sustaining the State's hearsay objections, we affirm his conviction. However, we remand the case to the trial court with instructions to strike or modify Lyon's community custody conditions consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Cruser, A.C.J.

Che, J.

25